Baldwin, J.
delivered the opinion of the Court.
A judgment or decree when reversed is a mere nullity, and the party aggrieved has a right to be restored to what he has lost by reason of such erroneous decision. He is consequently entitled to such appropriate remedies as the law gives to one whose money or property is withheld by another, against his better right. But the Court whose judgment or decree is reversed and annulled, having by its own act occasioned the wrong, possesses an inherent and summary jurisdic *281 tion to afford the redress, without reference to the pecu- ,. liar nature of the controversy which it had erroneously determined. This is unquestionably true, and such is the settled practice where the same Court abrogates its own erroneous decision; as in the case of a judgment reversed upon a writ of error coram vobis, or an interlocutory decree reversed upon a rehearing, or a final decree upon a bill of review. The principle is the same where the reversal, instead of being the act of the same Court, is performed for it by an appellate forum; and in truth the judgment or decree of the latter is remitted to, entered upon the record of, and becomes both in form and effect the judgment or decree of, the former Court.
The power of a Court to repair the injury occasioned by its own wrongful adjudication, is not derived from a mandate of the appellate forum, made upon rendering the judgment or decree of reversal, but is substantially the same which it exercises when its own process has been abused, or used without authority, by its suitors or ministerial officers; as for example, where a writ of habere facias possessionem has been sued out improperly, and the defendant therein turned out of possession, the Court may award a writ of restitution. And so it may where its process has been misapplied by its own authority erroneously exercised, as is made manifest by a reversal of the judgment or decree on which it issued, whether accomplished by its own jurisdiction, or that of a higher appellate tribunal.
The mandate of the Appellate Court for restitution is, properly speaking, no part of the judgment or decree of reversal, but rather supplemental thereto. It declares the legal consequence of the reversal, but it gives no specific relief, and awards no process from the Appellate Court. It is not pronounced as part of the judgment or decree which the Court below ought to have rendered; for a correct decision by that Court *282 would have prevented, instead of occasioning, the loss that calls for restitution. When a judgment or decree for the defendant is reversed, then the Appellate Court, procee(jjng t0 ren(jer such judgment or decree as the ^'ourt below ought to have rendered, gives to the plaintiff the relief to which he was entitled; but when a judgment or decree for the plaintiff is reversed, then the Appellate Court, in proceeding to render such judgment or decree as the Court below ought to have rendered, dismisses, in appropriate language, the plaintiff’s action or suit. In the latter case, there is no adjudication in the Appellate Court of the question of restitution, but the mandate for it follows as a declaration or designation of the legal effect of the adjudicated reversal and dismissal.
In truth, the question of restitution is not presented to the Appellate Court for adjudication by the record from the Court below, where it does not and cannot arise until after a reversal of the judgment or decree. The record therefore is not prepared with a view to a decision of that question in either Court; and the occurrence of such a question does not appear from the record, unless it be casually or incidentally,' for the merits of the controversy determined by the erroneous judgment or decree, can in no wise depend upon the process resorted to for the purpose of compelling its performance.
That the mandate for restitution is merely declaratory or directory, is obvious from the consideration, that it is never refused upon a reversal on the merits, unless for the want of sufficient evidence to shew that the erroneous judgment or decree has been actually enforced; and then the refusal is never entered on the record, but the whole matter silently referred to the cognizance of the Court below.
In the English practice, as indicated by the formal entries, the mandate for restitution is appended, as a *283 matter of course, to the reversal of a judgment at law for the plaintiff, and expresses that the defendant “ be restored to all things which he hath lost by occasion of the said judgment;” without specifying the thing itself, or the time when, or by what mode of proceeding it is to be restored. And the process of restitution does not issue as a matter of course, but must be applied for in the Court to which the cause is remanded, or in which it is retained ; is awarded by such Court; and is adapted to the evidence of the loss. For example, if the erroneous judgment was for money, and “ the plaintiff has had execution, and the money has been levied and paid, and the judgment is afterwards reversed there, because it appears on the record that the money is paid, the party shall have a writ of restitution without a scire facias; for there is a certainty of what is lost: otherwise where it was levied, but not paid ; for there must then be a scire facias, suggesting the matter of fact, to wit, the sum levied,” &c.
With us, however, the formal mandate for restitution, (which is in substance and effect that of the law itself,) is seldom appended to the reversal, and never without the application of the party aggrieved: and then it may be in general terms, or more or less special, according to the evidence of the loss which the record may happen to contain; but is usually conditional upon its appearing to the Court below, that the erroneous judgment or decree has been enforced. And, indeed, the essential nature of the mandate subjects it to such a condition, whatever may be its terms; for it cannot be conceived as the duty of the Court below to yield restitution where there has been no loss, or where it has been already made; or that the Appellate Court, without the direct and certain means of information possessed by the Inferior Court, has undertaken collaterally, incidentally and without enquiry, upon merely casual evidence, to determine conclusively the question of loss.
*284 Our accustomed omission of a mandate for restitution cannot, therefore, where there has been a reversal upon the merits, be treated as resulting in the monstrous perversion of justice, that there shall be no restoration to what has been lost by occasion of the erroneous judgment or decree; nor in ousting the Court below of its inherent and salutary jurisdiction of correcting the misapplication of its own process, and so driving the party aggrieved to a new and perhaps unproductive action, it may be in another and distant forum.
Where the restitution is sought at law, resort must of course be had to the formal legal process already mentioned; but where it is sought in equity, such formalities need not be adopted further than may be deemed expedient; and redress may be awarded by a decretal order, founded upon a rule to shew cause, or upon motion after notice to the adverse party.
In the present case, the evidence is sufficient to indicate that the appellant was entitled to redress, at least to some extent, and to what extent was a proper subject for enquiry before a commissioner.
The Court is therefore of opinion, that the decretal order of the Chancellor overruling the appellant’s motion for restitution, is erroneous: And it is decreed and ordered that the same be reversed and annulled with costs. And that the cause be remanded to the Chancery Court, to be there proceeded in according to the principles above declared.