# CHARLESTON.

KECK v. ALLENDER et al.

Submitted September 9, 1896—Decided Nov. 25, 1896.

RESTITUTION—PROCEEDINGS FOR RESTITUTION—PAYMENT BY COMMISSIONER BEFORE APPEAL—LIMITATIONS.

By decree of 1888, V. and L. were decreed payment of their liens as second in priority, to be paid out of the proceeds of sale of certain real estate which had been sold under decree, the sale confirmed, and the proceeds directed to be collected and disbursed to the lienors in the order ascertained and fixed by the former decree. Afterwards, in 1889, the order fixing the priorities was changed, remitting V. and L. to the fourth place, and bringing up P. and R. to the second and third places. V. and L. appealed, and the decree of 1889 was reversed, and the decree of 1888, as to order of payment, restored, so far as it related to the payment of the liens of V. and L. But before the appeal was taken, but within the time given by statute to appeal, the commissioner who was directed to disburse the proceeds of sale paid to P. and R. the amounts of liens decreed them. *Held:* (1) That V. and L., with proper pleadings, with notice to, or appearance by or for, the parties in interest, may have an order or decree of restitution. (2) Such proceeding could be by rule in the nature of a *scire facias;* by cross-bill, in form of amended answer, praying affirmative relief; or by motion. (3) That the money was paid to and received by P. and R. in good faith constitutes no defense to the right of restitution in such a case. (4) P. and R. are not protected from paying back such money by any statute of limitations, inasmuch as the chancery cause was pending from the inception to the close of the transaction. (5) P. and R. have no right to compel V. and L. to await the settlement of the accounts of the

receiver, to see if there is another fund to the credit of the cause, and, if so, to go against such fund.

R. L. BERKSHIRE, G. C. STURGISS and W. H. TRAVERS for appellant. R. L. BERKSHIRE and G. C. STURGISS cited 10 W. Va. 214; 12 W. Va. 298; 5 Leigh, 305; 4 Gratt. 187; 2 Bart. Ch. Prac. 932, 1140, 1144; 5 Gratt. 272, 282; 16 Gratt. 355.

COX & BAKER for appellees, cited, 37 W. Va. 201; 2 Bart. Ch. Prac. 1142; 16 Gratt. 355; 7 N. H. 485; 5 Gratt. 272, 280; 2 Leigh, 261; 2 Arch. Prac. 76, 237; 1 Call, 147; 3 Munf. 229; 13 W. Va. 231; 33 W. Va. 152; 32 W. Va. 152, 335; 25 W. Va. 692; 20 W. Va. 223; 26 W. Va. 583; 2 Munf. 272; 2 Ind. 239; 18 Cal. 275; 23 Ala. 296; 7 W. Va. 447.

HOLT, PRESIDENT :

Upon appeal from a decree pronounced by the Circuit Court of Taylor county on the 26th day of September, 1895, directing restitution of money to the credit of this cause, wrongly paid to appellant, Pickenpaugh, and to Reed.

On the 29th day of February, 1884, Protzman, Reed, appellant Pickenpaugh, and others brought their suit in chancery in the circuit court of Monongalia against Elisha C. Allender and others to enforce mechanic's liens against a certain steam grist mill built by Allender. On the 23d day of June, 1884, an order of reference was entered in the cause to ascertain and report the liens against this property. Master Commissioner Dent executed the order, and filed his report on the 2d day of May, 1887, in which he reported *inter alia*, a mechanic's lien in favor of Pickenpaugh of four hundred and thirty nine dollars and twenty nine cents. Allender excepted to this debt, as one hundred dollars too much; and to the report, as not made as required by the order of reference. Here this cause stopped. Shortly thereafter Phillip H. Keck, being trustee in a deed of trust on the mill to secure the debts of sundry creditors filed his bill in equity alleging that, for reasons given, he was not able to execute the trust safely without the aid and direction of the court; making Pickenpaugh and others defendants, who accepted service of process. At the Febru-

ary term, 1887, an order of reference was entered, by consent, to ascertain liens, etc.; and, by like consent, P. H. Keck was appointed a special receiver, with directions to take charge of the mill, and to use and run the same to the best advantage of the creditors, until the sale, and until the further order of the court. The master commissioner executed the order of reference in this second cause, and returned his report, which was filed on the 18th day of June, 1887, on which day the cause was heard on this report and other papers; and the report, appearing to be regular on its face, and no exception thereto being taken, was approved and confirmed. In this report, as confirmed, the claims of Long and Vandervort were reported as liens No. 2 in dignity, and that of Pickenpaugh as No. 4; and, by the same decree, L. V. Keck and George C. Baker were appointed special commissioners to sell the property. Accordingly, they sold the mill, reported the sale at the price of five thousand three hundred and five dollars, and on the 13th day of october, 1887, the same was confirmed, without exception, and the commissioners of sale were continued as commissioners to collect and apply the proceeds to the liens in the order of priority thus fixed and determined.

On the 2d day of March, 1888, Pickenpaugh and defendant Reed filed their petition to rehear and correct these decrees fixing priorities, setting up that the Protzman suit was still pending; that the true place of their lien, in order of priority, was No. 2, ahead of Long and Vandervort, instead of No. 4, to which latter place they were mistakenly assigned by the commissioner. To this petition defendants Long, Vandervort, and Keck, trustees, appeared and answered; and such proceedings were had that by decree entered on the 17th day of October, 1889, the court held that the report of the master commissioner, which had been confirmed without exception, was erroneous on its face, in marshaling the liens, and corrected the decree by placing Pickenpaugh's mechanic's lien as No. 2, remitting the lien of Long and Vandervort to the fourth place; and from this decree Long and Vandervort appealed, and their case was decided in this Court in December, 1892. See *Keck* v. *Allender*, 37 W. Va. 201 (16 S. E. 520).

This decree of 1889, appealed from by Long and Vandervort, was clearly wrong, on the record as it then was in this Court, as appears from the opinion of Judge English, delivering the opinion. Pickenpaugh, the only one here complaining, was a party to the suit; had time and opportunity to except to the master's report, but did not; the report was confirmed; a sale of the mill decreed; the sale was made, reported, and confirmed; the commissioners who sold were continued as commissioners to collect, and were directed to apply the proceeds in discharge of the liens in the order as ascertained and fixed by said decree of 1888; and therefore this Court held that, no error appearing on the face of the pleadings and decree, Pickenpaugh could not then have the cause in that court so reviewed as to change the order of priority of payment out of the proceeds of the mill; and therefore the decree complained of was reversed, and the cause remanded for further proceedings—not in review of the final decree of 1888 thus affirmed by this Court, but in order to carry it into execution. But, before Vandervort and Long had obtained and perfected their appeal, the commissioners to sell, collect, and disburse had, under the amended decree of 1889, paid to Pickenpaugh and Reed their liens, as prior in order of payment to those of Vandervort and Long; and so, when the cause came back, and the mandate of this Court was entered in the court below, Vandervort and Long filed an amended and supplemental answer, by way of cross-bill, setting out the facts, and praying that a decision and mandate be carried into effect, and, to that end, that Pickenpaugh and Reed be ordered to restore to the commissioners to collect and disburse, the money thus improperly paid them, and that the same be paid to Vandervort and Long, the persons entitled. To this answer by way of cross-bill, Pickenpaugh and Reed filed their special reply in writing. Among other things, Pickenpaugh and Reed alleged that they were taken by surprise as to the method Vandervort and Long would pursue to obtain restitution; that they were not then prepared for a hearing, having important evidence which this method of procedure made it necessary for them to take. They alleged that a considerable sum of money had come into the

hands of Keck, the special receiver, and the plaintiff in this cause; that the mill was valuable, having been rented for six hundred dollars a year; that plaintiff Keck, the trustee and receiver, was required to file an accurate statement of his receipts and disbursments, and settle his accounts, which he had never done, so that Pickenpaugh and Reed could not tell what amount was in his hands to the credit of this cause, or with what amount he ought to be charged; and that the court should require the settlement of the receiver's accounts before decreeing the payment of the money in controversy; nor, in any event, should they be required to pay this money over to Vandervort and Long, for it had been voluntarily paid to them, by the commissioners, on their liens then due, as they were directed to do by the decree in the cause not then appealed from, and they had received it in good faith. But the circuit court of Taylor county on the 26th day of September, 1895, heard the cause, and decreed that each one (Pickenpaugh and Reed) should pay to Vandervort and Long the money paid to the former, with interest, according to the motion and cross-bill of Vandervort and Long. From this final order, Pickenpaugh alone has appealed.

1. No motion to continue was made or overruled, and on that point there is nothing for this Court to consider, except as far as it was involved in ordering the receiver to settle, which would, of necessity, have operated as a continuance of the cause.

2. Did the court err in refusing to refer the cause for settlement of the receiver's accounts and in staying the order of restitution until such settlement had been made? By reason of the erroneous decree of the circuit court in 1889, changing the order of priority of the lien of Vandervort and Long, turning them down from above to a place below this appellant, they were aggrieved, and upon the reversal of such decree, restored to their former place in the order of right of payment, had a right to be restored to what they had lost by reason of such erroneous decision, and have restitution of that which was of right theirs, but had been wrongfully paid over to another, and were entitled to such remedies as the court of equity gives in such cases to one

whose money is withheld by another against his better right. The record in the appellate court seldom presents the facts on which to base a specific order of restitution, and of course, could not have done so in this case. The power of the lower court to repair the injury occasioned by its own wrongful adjudication is not derived from, or dependant upon, a mandate of restitution issued by the appellate court upon reversal of the lower court, but is substantially the same which the lower court exercises when its own process has been abused or used without authority. Hence the performance of the reversed decree being made to appear, as was done in this case, by the record in the lower court, an order or decree of restitution may be made upon motion, a rule in the nature of a *scire facias*, on proper pleadings, with notice to, or appearance by or for, the parties in interest. See *Flemings* v. *Riddick's Ex'r*, 5 Gratt. 272, 280; 2 Bart. Ch. Prac. p. 1142, § 376; *Little* v. *Bunce*, 7 N. H. 485, 28 Am. Dec. 363, notes; *Crocker* v. *Clement's Adm'r*, 23 Ala. 296.

That the money was paid to him and received by him in good faith has nothing to do with the question. It having been decided that Vandervort and Long have the better right, and that it was paid to appellant in derogation of such right, what justification can a decree of the lower court reversed and annulled by the court of last resort afford appellant for refusing to pay it over to those to whom it belongs? This decision of the appellate court the court below properly declined to review, or again call the matter into question; for whether right or wrong, there must of necessity be somewhere, at some time, an end of litigation; and the matter here sought by appellant to be again put in issue had already been finally adjudged, and the record of the suit of Protzman against Allender, whatever effect it might have had, if it had been heard together with this cause, now comes too late.

The appellant, Pickenpaugh, can still go against any fund there may be in the hands of the receiver to the credit of the cause, so far as he can show himself entitled. But what interest have Vandervort and Long in this question, when they have a right to have this particular fund re-

stored to the credit of the cause, and paid over to them ? for they are entitled to be paid first, in full, out of the proceeds of sale, whether appellant can find any rents or profits from the mill in the hands of the receiver or not. Hence the court properly refused to turn them over to a fund that was only supposed to exist, and compel them to wait indefinitely for the fact of the existence of such fund to be ascertained by causing the receiver to settle his accounts.

The appellant claims the benefit of some statute of limitations. How could any statute run so as to bar an order of restitution in a cause which has been a pending cause from the inception of this transaction continuously down to the entering of the decree complained of ?

Complaint is also made against Vandervort and Long, as guilty of negligence and *laches* in taking their appeal. But how can they be charged with inexcusable delay in asserting a right, when it was asserted within the period prescribed by law for taking appeals.

I see no error in this record, and therefore the decree complained of must be affirmed.