Argued 6 December, 1899; decided 29 January; rehearing denied 13 August, 1900.

## MCFADDEN v. SWINERTON.

[59 Pac. 816, 62 Pac. 12.]

RIGHT OF ATTORNEY TO MAKE CLIENT INTERPLEAD.—An attorney having the proceeds of a claim received for collection, who does not question his client's title thereto,.is entitled to compel his client to interplead as against adverse claimants of the fund.

INTERPLEADER—INTEREST OF PLAINTIFF IN FUND.—An attorney's claim for fees against a fund collected is not such an interest therein as will prevent his maintaining a bill of interpleader against divers claimants to the fund, where the claims of some of the parties interpleaded are derived through a common source, and the interests of the plaintiff and the other persons interpleaded are those of agents and attorneys, derived by agreement with those parties, and the ulterior question is whether the agents are entitled to the fund as against the principals.

DISTRIBUTION OF FUNDS.—Creditors of an insolvent railroad company assigned their claims to S under an agreement that he should commence an action

thereon by attachment, secure the services of an attorney without charge unless he was successful in making collection, and advance all necessary costs in the proceedings. After the commencement of the proposed action, V, who had held numerous claims, assigned them to S, and agreed that S, in the event of the attachment suit being dismissed, and of his having to look to the sale of the railroad for payment, might retain from the amount collected on his claims "his pro rata of the legal expenses, except attorney's fees, which had been incurred in the action." The attachment suit having failed, the attorney for S caused the claims to be presented to the receiver, through a correspondent, and collected a dividend thereon, without authority of the assignors, other than V. *Held*, on a bill of interpleader filed by the attorney making collection, to which the several creditors were made defendants, that S could claim no lien on the proceeds of the collection for expenses advanced in the attachment suit, since the assignment gave him no property in the claims, except for the purpose of instituting the action, but that the share of V in said fund was liable to such charge.

EFFECT OF DISTRIBUTION OF A FUND PENDING APPEAL.—Payment of a fund in court to the persons to whom it has been judicially awarded, pending an appeal from the award, does not subject the clerk to any personal liability, in the absence of an order directing the fund to be retained.

RESTITUTION AFTER MODIFICATION ON APPEAL.—Where a fund has been paid out before the determination of an appeal which results in modifying the order of distribution, the appellant will be entitled to recover from the other parties whatever was wrongfully paid them; but the method of accomplishing this object varies with different circumstances.

IDEM.—Under Hill's Ann. Laws, § 545, providing that, where a judgment or decree is reversed or modified by the appellate court, it "may direct complete restitution of all property and rights lost thereby," the appellate court will merely direct restitution, and remand the cause to the court below for enforcement of the order, if the right to restitution depends entirely on matters outside the record.

From Benton : J. C. FULLERTON, Judge.

The plaintiff herein prays an order directing an interpleader between several defendants to determine conflicting interests touching a fund in his hands. It is alleged that in or about October, 1895, the defendant W. A. Swinerton filed a claim for the sum of $12,794.52 against the Oregon Pacific Railroad Company and the Willamette Valley & Coast Railroad Company in a receivership proceeding wherein the Farmers' Loan & Trust Company was plaintiff and the above named corporations were defendants ; that said claim constituted the aggregate of several lesser claims ; that a dividend of $1,245.04 was declared thereon ; that the defendant Dickinson was the

agent and attorney of Swinerton ; that plaintiff was also his attorney of record in said cause, and as such attorney received the said dividend from the court; that he applied $124 50 thereof to his own use as his fee for services rendered in securing the allowance of said dividend, and forwarded $400 to Dickinson, leaving a balance of $720.54 to be disposed of ; that each of the defendants, D. R. Vaughn, Samuel Wyatt, and C. Sullivan, claims an interest in said dividend which, in the aggregate, exceeds the whole amount thereof, and has made demand upon the plaintiff for payment of his respective claim ; that Dickinson also claims the whole thereof ; that plaintiff is ignorant of the respective rights of the defendants ; that there is no collusion between him and either or any of them ; that plaintiff has no claim upon said $720.54, is ready and willing, and hereby offers, to deposit the same in court, or deliver it to such person as the court shall direct.    This complaint was filed June 11, 1896, and, on the twenty-sixth, Dickinson filed his answer.    He admits that Swinerton filed the claim in question, and the allowance of the dividend as stated ; that he was the attorney for Swinerton, and, as such agent or attorney, employed plaintiff to appear for Swinerton, and represent him in the presentation of such claim, and that he authorized him to draw the dividend, and, further answering, he alleges that the plaintiff was entitled to the sum of $60 only, in pursuance of an agreement made with him as the agent and attorney of Swinerton ; that Vaughn, being the owner of a large number of claims against the Oregon Pacific Railroad Company, aggregating about $8,000, did, on December 2, 1893, for value, assign and set over the same to Swinerton, who, in part consideration therefor, agreed to cause suits to be instituted upon said claims, together with numerous others, he to advance the costs and expenses of such suits, and to receive the

same back in the event of recovery or payment of any dividend thereon; that, in pursuance of said agreement, this defendant became the attorney for Swinerton, and afterwards his agent; that certain suits were commenced, and attachments levied therein upon the steamship Willamette Valley, while in port in San Francisco, at the instance and request of Vaughn; that said suits were determined adversely to Swinerton, and that the expenses incurred and paid by him exceeded the sum of ten per cent. upon the gross amount of said claims, and that the amount set forth in the complaint herein is all that Swinerton, or any person for him, has received; that the defendant has no knowledge of any claim of Wyatt or Sullivan, nor has he any information regarding the same, and therefore denies that they have any interest whatever in the fund; that immediately prior to the collection of said moneys by plaintiff the defendant Swinerton set over his claim thereto, subject to all the terms and conditions under which he held the same, to this defendant, for the purpose of collection, and to do any and all things necessary thereto in the premises; that plaintiff had full knowledge of the relations of this defendant to the subject-matter of this action, and acted entirely under his directions and instructions; that plaintiff never had, and has not now, any right whatever to withhold the said money so collected, or any portion thereof, except the $60 attorney fee, and that this defendant is entitled to the remainder thereof, less the $400 heretofore remitted.

On July 25, 1896, the court made an order reciting the facts as stated in the complaint, and directing the plaintiff to deposit with the clerk of the court the said sum of $720.54 to the use and benefit of said defendants Swinerton, Dickinson, Vaughn, Wyatt, and Sullivan, as their several interests might thereafter appear and be determined by the court, less $10 clerk's fees paid by him, and

that, when he "shall have deposited with said clerk said money, he shall be relieved from further responsibility therefor. And the clerk of said court is hereby authorized and directed to receive from said plaintiff said sum of money, to wit, $710.54, to the use and benefit of said defendants, as their several interests may hereafter appear, and hold the same subject to the further orders of this court." On November 11, 1896, plaintiff filed a reply to the answer of the defendant Dickinson, wherein he denies the allegations touching the $60 fee, or any knowledge of the alleged relations of said defendant to the subject-matter of the action, or that he acted under the directions or instructions of said defendant or any other person in the premises, and alleges that he took the claim for collection in the usual course of business, and that ten per cent. of the amount recovered is a reasonable fee for his services.

The defendant Vaughn filed his answer on December 10, 1896, admitting all and singular the allegations of the complaint, and denying Swinerton's ownership of the claim and the material allegations of Dickinson's answer. For a further defense he sets up that he owned in his own right claims amounting to the sum of $9,215.60 of the aggregate claim presented, and upon which the dividend was allowed ; that said claim was wrongfully presented to the referee in the name of Swinerton for allowance, and that neither Swinerton nor Dickinson had at any time any right, title, or interest in or to the same, or in the dividend adjudged thereon ; that of the money now in the plaintiff's hands he is the owner of and entitled to the sum of $365 ; that in the year 1893 or 1894, at the instance of Swinerton and Dickinson, he agreed to place the said aggregate claim of $9,215.60, in conjunction with others against the said Oregon Pacific Railroad Company, with Swinerton, with the express understanding that

Swinerton and Dickinson should assist him in collecting the same; that Swinerton was simply to be a representative figurehead, through whom all claims should be represented for collection as a common agent for all concerned, while Dickinson was to assume and perform all legal services in connection therewith, and that Swinerton and Dickinson, in consideration of the assistance to be rendered them in bringing the claims together, agreed to represent and collect the aggregate of said claims without charge or expense to him; that this defendant rendered the assistance in accordance with the agreement; that he allowed Swinerton and Dickinson to nominally control and represent the whole, but retained and held the absolute property in the claims, except only such as belonged to Wyatt and Sullivan, and that the only interest Swinerton and Dickinson ever had therein was simply as agents for the collection of the same in the State of California, and not elsewhere or otherwise, and that they were to make such collections without cost or expense to this defendant; that they failed to collect any portion of said claims in the State of California, and that they presented them in the receivership proceedings in this state without the knowledge or consent of the defendant; and that he has at no time transferred or sold the said claims, or any part thereof, to said Swinerton or Dickinson, nor have they, or either of them, any right, title, claim, or interest in or to any of the said money now in the hands of the plaintiff.

Sullivan and Wyatt set up substantially the defense that they intrusted certain moneys with Vaughn for the purchase of claims against the railroad company; that Vaughn purchased a number of them, and took the assignment to himself, but that he had no authority from either of them to assign said claims to any other person, or to negotiate for their collection, and they each claim an in-

terest in said fund. Later on, George F. Eglin intervened, and claimed an interest in the fund. The court below decreed that the fund be distributed between D. R. Vaughn, Samuel Wyatt, C. Sullivan, and George F. Eglin, and the defendants Swinerton and Dickinson appeal.                                                    MODIFIED.

For Swinerton and Dickinson there a brief and an oral argument by *Mr. H. C. Watson.*

For A. L. McFadden there was a brief over the name of *W. E. Yates,* with an oral argument by *Mr. McFadden in pro per.*

For Sullivan, Wyatt, Vaughn, and Eglin there was a brief and an oral argument by *Mr. W. S. McFadden.*

MR. CHIEF JUSTICE WOLVERTON, after stating the facts in the foregoing language, delivered the opinion.

It is contended that an interpleader will not lie under the facts developed in the course of the proceedings, because : (1) The plaintiff is himself interested in the controversy by reason of having retained $124.50 out of the original fund coming into his hands as compensation for his services as attorney in its collection, touching which there is a dispute between him and Dickinson ; and (2) he is but the agent or attorney for Swinerton, and as such required to account to him, regardless of whatever other demands may have been made upon the fund. As a general rule, an agent, attorney, or bailee cannot compel his principal to interplead with a stranger claiming by paramount and adverse title funds which have come into his hands by virtue of his representative capacity : *Shaw* v. *Coster,* 3 Paige, 339 (35 Am. Dec. 690, 704, note). It is also a rule of general application that the plaintiff praying

an interpleader shall be and continue entirely indifferent between the conflicting claimants, and that the bill will not lie where he asserts an interest in any part of the fund or other thing in dispute : 11 Enc. Pl. & Prac. 455; *Wing* v. *Spaulding*, 64 Vt. 83, 86 (23 Atl. 615); *Brides-burg Mfg. Co.'s Appeal*, 106 Pa. St. 275. The first rule stated is not an invariable one, while, as it pertains to the latter, the assertion of an interest by the plaintiff in the fund goes to the very right of maintaining the bill. It frequently becomes an interesting and controverted question, however, whether the facts prevailing show the plaintiff to have such an interest as is inimical to the maintenance of the interpleader. There is an old case (*Cotter* v. *Bank of England*, 3 Moore & S. 180) wherein the bank claimed a lien upon bullion in respect of certain freight charges which had been paid on account of it, and it was said the bank did not seek to charge one party or the other, but had charged the bullion, and it was held that the interpleader would lie. This was under a statute, but the principle involved was the same as without it. So, also, an interpleader was maintained in *Gibson* v. *Goldthwaite*, 7 Ala. 287 (42 Am. Dec. 592), by an attorney who had collected certain notes and bills placed in his hands for collection by the Tombigbee Railroad Company, the proceeds of which were demanded by parties claiming title by transfer from the company. It was there alleged that the plaintiff had no interest in the fund beyond his commission which he retained. In the opinion of the court we find this language : "The authorities cited merely show that a private agent cannot question the title of his principal to money or property which he has received from or for him by bill of interpleader, where a third person sets up a claim to it. Here the complainant does not deny the right of the corporation, his principal, but merely states that two of the defendants

claim, as its assignees, the money which he holds to his credit. The defendants do not set up a title independent of and paramount to the principal, but merely derivative. They professedly deduce their title from the same common source, and are in such a predicament that they may with propriety be required to interplead, and adjust their conflicting claims.'' In the case at bar the plaintiff and the defendants Dickinson and Swinerton are all agents, according to their allegations, as it respects the fund in controversy; plaintiff and Dickinson in the capacity of attorneys, and Swinerton as a specially constituted agent for the purpose of bringing suit in his name. The plaintiff and Dickinson claim an attorney's fee of ten per cent. of the amount collected, while Swinerton claims a special property therein by reason of the advancement of certain costs and expenses incurred in the suit. But the plaintiff's claim is but a charge upon the fund, which brings the case in close analogy to those last cited.

The claims of the other parties interpleaded are derivative from the same source, and the interest, if any, of the attorneys and agents, is derived through contract or agreement with those parties; and the ulterior question presented is whether the agents are entitled to the fund as against the principals. None of the parties to the proceeding are making any objection to the interpleader, except Dickinson and Swinerton; but a decree of interpleader was entered by the court below in such a manner as to suggest their consent to the same, and they ought not now to be heard to impugn its authority. There is no dispute touching the authority of the court to enter the order or decree on account of the state of the pleadings, or the cause not being ripe for determination, but the effect, only, of such order or decree is challenged. It cannot otherwise be construed, however, than as a proceeding requiring the parties to interplead so that the plaintiff

may be relieved from further responsibility touching the fund paid into court.    It appears from the decree that all of the parties, except Eglin, who subsequently intervened, appeared by their respective attorneys, and the court found the allegations of the complaint to be true, which could not have been done, under the state of the pleadings, without the consent of the parties.    It is, therefore, quite natural to assume that the parties assented to the decree of interpleader, and that decree has put the first stage of the case at rest, whether it may be said to be technically a proper case for an interpleader or not; and this court will so treat it.

Plaintiff's reply to Dickinson's answer put in issue the matter touching the attorney's fee, and, upon this issue, as well as upon the issues formulated by the parties interpleading, the court heard evidence, and determined it, with the other issues, at the final hearing.    The questions thus involved will now receive our consideration.    Swinerton did not answer, although he appeared when the decree of interpleader was entered; but whatever interest he has in the fund is set up by Dickinson's answer to the complaint.    It is shown beyond dispute that during the years 1892 and 1893 Vaughn was an agent for the receiver of the Oregon Pacific Railroad Company, located at Philomath, Oregon; that he purchased numerous labor and other claims against the receivership; that Sullivan and Wyatt—two of the co-defendants—furnished money to Vaughn at the same time to purchase like claims, which he did, taking the assignment thereof to himself. Having thus acquired numerous claims, Vaughn, representing claims amounting, as stated, to $8,000, signed the following memorandum at the solicitation of Dickinson, Swinerton, and the H. S. Crocker Company:

"San Francisco, Dec. 2nd, 1893.

*To the Creditors of the Oregon Pacific Railway Company—*

Gentlemen : The undersigned, one of the above creditors, begs leave to state as follows : That at a meeting of the creditors, held recently, the question of sending a representative to be present at the sale on December 15th of the company's road in Oregon was discussed, and thought favorable of. Since that meeting, information has come to us, which we think renders it unnecessary to send any one, or to go to that expense ; but, as we have called your attention to the matter, we desire to further state that, if the sale be not made the 15th, as advertised, we shall be in a position to attach property for our claims. If it should be made, I think that we can arrange to get our claims paid in advance, perhaps, of others. Therefore, if you are willing to join your claims with ours in the premises, we will cause it to be looked after the same as ours, and at an expense which shall be satisfactory to you. If you feel inclined to join with us under these circumstances, please sign this letter, and state the amount of your claim, and whether the claim accrued under Mr. Hoag's administration as receiver or under Mr. Hadley's administration. Mr. Hadley is the present receiver. Should you sign this, we shall consider it an assignment of your claim, if necessary, for the purposes of bringing suit.''

On December 15, the H. S. Crocker Company made the following assignment upon said paper or memorandum :

"For value received, we hereby sell, assign, and transfer the above accounts to W. A. Swinerton.''

Subsequently the defendant Eglin assigned certain other claims to Vaughn for the purpose of collection, which were assigned to Swinerton on like conditions as those contained in the foregoing assignments. An action was instituted in the name of Swinerton to recover upon these claims, together with divers others, and the steamship Willamette Valley attached in San Francisco. This suit was unsuccessful, and was, accordingly, dismissed.

Thereafter these claims, with others, were forwarded from San Francisco by or at the instance of Dickinson, and presented in the name of Swinerton to Hon. A. C. Woodcock, who was appointed referee for the adjustment of claims against the receivers of the Oregon Pacific Railroad Company, and were approved to the amount of $8,264.81, including interest, and a dividend of .09846 per cent. directed to be paid thereon. Subsequent to the presentation of the claims, the plaintiff was requested to represent the claimants in the capacity of attorney before the referee. This he did, and, when allowed, drew the dividend thereon, amounting to $1,245.04, and forwarded $400 thereof to Dickinson. The remainder constitutes the fund which forms the basis of the present controversy.

Mr. Dickinson testified, in effect, that he prepared and presented the claims against the Oregon Pacific Railroad Company as the attorney for Swinerton ; that Swinerton, being about to depart for Japan, gave him an assignment thereof, to enable him to proceed with the collection; that, prior to this assignment,—about April 8,—witness had procured an order from Swinerton, and sent the same to plaintiff, to enable him to draw the dividend allowed and ordered paid upon the claims ; that he was employed, both by Vaughn and Swinerton, the latter part of November, 1893, to prosecute the claims referred to against the Oregon Pacific Railroad Company and take all necessary steps deemed advisable to enforce the collection, and particularly against the steamship Willamette Valley by attachment, the costs to be advanced by Swinerton ; that witness was to receive for his compensation ten per cent. of the recovery after repaying the costs ; that the costs mentioned by Swinerton in his deposition were paid through him, and that he is at present the owner of the claims or of the fund arising from the dividend directed to be paid thereon. On cross-examination he testified

that he required further assistance in the prosecution of the claims, and desired to employ plaintiff, and pay him a reasonable fee therefor; that his clients had already expended a large amount of money, and did not care to go to further unnecessary expense, and that he notified plaintiff that his compensation must depend upon the contingency of recovering something; that the base of his charge was ten per cent. of the amount that should be recovered, and that plaintiff should be willing to take one-half of the amount, which was agreed to by him; that he took the claims from Vaughn relying entirely upon his statements regarding them; that he supposed Vaughn was at Corvallis all the time, and would assist in looking after the claims; and that, when he forwarded the same to the referee, he wrote Vaughn touching the matter.

Swinerton testified that in the month of December, 1893, the H. S. Crocker Company had a claim against the Oregon Pacific Railroad Company, and Vaughn was the agent of the latter company in San Francisco; that witness saw him a number of times regarding the collection of claims in controversy, as well as numerous other creditors of the corporation, and had sundry consultations with them; that he consulted also with his co-defendant Dickinson, who was the attorney for the H. S. Crocker Company, and introduced Vaughn to him, and they all three consulted together; that the result of the consultation was an assignment of sundry claims to him for the purpose of bringing suit upon them, including those held by Vaughn; that at the time of making said assignment it was understood that the properties of said corporation were advertised for sale, and, if the sale should result in securing enough money to pay the claims, no further proceedings were to be taken, but, if not, the witness agreed with the assignors, and particularly with Vaughn, that he would have the steamship Willamette

Valley attached, and force payment by the sale thereof; that he would secure the services of Mr. Dickinson as attorney without charge, unless he should succeed in making the collection, and also that he would advance the necessary costs of the proceeding or proceedings to be taken; that he caused suit to be brought in the Superior Court of the City and County of San Francisco against the railroad company, and the steamer to be attached; that the attachment was levied about December 17, 1893, and was released April 10, 1894, the suit being virtually defeated, and there being no chance of maintaining it, or reaping any benefit from the attachment; that Vaughn was kept fully advised of every move, and that, when it became doubtful as to the maintenance of the action, Vaughn, on February 2, 1894, signed and delivered to him the paper annexed to his deposition, which is as follows:

"*W. A. Swinerton, Esq., San Francisco, Cal.*—

DEAR SIR: I am going away to Oregon shortly, and will probably not be here when the suit against the Oregon Pacific R. R. Co. will be decided. From developments since suit was commenced, by reason of vessel being mortgaged so far as at present advised, I am advised by attorney we may probably have to let go our hold on vessel, and look entirely to the railroad and sale of same for payment of our claim. I therefore authorize you to retain from collection of my claims assigned to you my pro rata of the legal expenses, except attorney's fees, which may have been incurred in this action";

That he caused to be sent, under date of October 29, 1895, through his attorney, Dickinson, to the Honorable A. C. Woodcock, at Corvallis, Oregon, corrected statements of the claims assigned to him remaining unpaid, which included those assigned by Vaughn; that the other claims mentioned in the assignment had previously been collected in full through a libel suit against the steamer, which embraced all the claims that he was advised could

be pursued in an action for libel ; that the claims against the Oregon Pacific Railroad Company presented to the referee for allowance, and the right to the dividend thereon, were by him assigned to his said attorney, Dickinson ; that the assignment was made by reason of his contemplated departure and absence, and to enable Dickinson to pursue the matter, to the end that the dividend might be collected, and the claims properly attended to ; that, by reason of the relations thus existing between himself, Dickinson, and Vaughn, the attachment action was instituted and prosecuted, and that witness had expended in costs of attachment, etc., $1,417.99, besides court expenses ; also the expenses of another action which he caused to be brought at the instance of Vaughn upon some other claims subsequently assigned ; that he has never received anything from Vaughn, or any one, on account of said costs and expenses incurred and paid in connection with said attachment action, except the $400 which plaintiff had forwarded from the dividend allowed.

Mr. Vaughn testified, in effect, that he went to San Francisco in March, 1893, as general agent for the Receiver of the Oregon Pacific Railroad Company ; that Dickinson and Swinerton, learning that he was a creditor in a large amount, agreed with him that, if he would furnish a list of San Francisco creditors, and endeavor to induce all to join with them, they would attach the vessel, and force collections thereby ; that, acting on the proposition, he furnished them a list of the various creditors ; that Dickinson advised that all the claims be assigned, for the purpose of collection, to one party ; that some time afterwards Dickinson showed him an assignment, which he subscribed, placing opposite his name $8,000, which was intended to cover all claims he then held against the company, but not the exact aggregate ; that he was to give them what information he could, and they were to make the collection without expense to him ; that witness took the memorandum at the instance of

Dickinson, Swinerton, and the H. S. Crocker Company, and went about the city, and induced numerous creditors to sign the same, many of whom represented marine claims; that he was directed to and did inform such claimants that, if the collections were not made through the attachment, the claims would be returned without costs to them, and that it was also understood that, if the collections could not be made in San Francisco, they would not affect his claims in Oregon if he desired to make collection there; that he never gave Swinerton or Dickinson any authority to file the claims in Oregon, or to collect the same in that jurisdiction; that he supposed it was not necessary for him to present them for an allowance, as they appeared upon the receiver's books, and had been approved by the court; that he signed the paper addressed to Swinerton and Dickinson for the purpose of inducing others to contribute their proportion towards the expenses in the attachment proceeding, and that it was understood that witness was still not to contribute towards the said expenses; 'that the parties who assigned their claims to him retained no authority or control over them, and that there is nothing due Swinerton or Dickinson from the dividend.

The defendants Sullivan, Wyatt, and Eglin testified that, in so far as each individual's claim was concerned, they gave no authority to Vaughn to assign them to either Dickinson or Swinerton for any purpose, and that neither Dickinson nor Swinerton was authorized to present the same, or any part thereof, in Oregon for allowance; that they supposed no such presentation was necessary, as the books of the receiver showed the present ownership thereof, and that the dividend thereon would have been allowed and paid at any rate in due course of settlement of the receivership matter. There is some testimony tending to show that these parties knew the attachment proceed-

ing against the steamship Willamette Valley was to be, and subsequently was, instituted, and the testimony of Vaughn is somewhat discredited by the correspondence which took place between him, Dickinson and Swinerton, which appears in the evidence. The plaintiff wrote Dickinson, April ·6, 1896 : '' I looked after this matter on the contingency of our ever getting anything, and will retain $60, if that is satisfactory to you and our clients.'' This proposition was accepted as satisfactory to Dickinson.

From the testimony, of which the foregoing is a cursory review, it is somewhat difficult to determine the exact relative rights of the parties litigant. It is apparent, however, that the memorandum or circular signed by the several claimants preliminary to attaching the steamship Willamette Valley constituted an assignment thereof for the purposes of instituting the action, and it was not intended that the title should pass for any other purpose. Swinerton was not the attorney, and could claim no lien in that capacity for the expenses advanced in the course of the proceedings, and the assignment did not give him a special property in the claims, except for the purpose of instituting the action. That such was the understanding of Swinerton and Dickinson is made apparent by the fact that they subsequently obtained from Vaughn a special authorization to retain pro rata all expenses chargeable to Vaughn out of the collections made upon the claims. The authorization referred to is the letter directed to Swinerton of date February 2, 1894, and which is witnessed by Dickinson. But, in so far as Sullivan, Wyatt, and Eglin were concerned, Vaughn certainly had no authority to pledge their claims for these costs and expenses, and hence they could not be bound by the authorization above referred to.

There is another feature of the matter that has some

weight.  Mr. Swinerton testified that he expended a
definite amount in the prosecution of the action in which
the steamship was attached.  It appears that a large
portion of the claims assigned to him were afterwards
collected in full by libeling the steamship, they being
marine claims ; but he makes no attempt to show what
reduction was made in his demand for expenses paid by
reason of these collections, and, in fact, the testimony is
so uncertain in its nature that it is difficult to say whether
or not there still exists any valid claim in his behalf on
account of said costs and expenses advanced by him.
However this may be, the authorization is so specific in
its nature as to entitle Swinerton, or his assignee, Dick-
inson, to such part of the fund or dividend allowed by
the court as Vaughn would otherwise be entitled to, and
this is all that either he or Dickinson is entitled to recover
from the fund, except that Dickinson should have the at-
torney's fees retained by the plaintiff, less $60.     Sulli-
van, Wyatt, and Eglin make no contention touching the
amount of the attorney's fees retained out of the fund,
nor as it respects the $10 costs incurred in commencing
this suit.    These amounts should, therefore, be deducted
from the aggregate dividend declared before any distri-
bution is made of the fund, which was not done by the
court below, and will, therefore, lessen the amount of
each share proportionately.    The decree will therefore
be that plaintiff pay to Dickinson the sum of $64.50,
and that of the fund now in the hands of the clerk of
the court below, to-wit, $720.54, there be applied $10 to
the expenses of instituting the suit, and that the balance
be distributed as follows :    $196.44 to Sullivan, $127.34
to Wyatt, $113.28 to Eglin, and $273.48 to Swinerton,
or Dickinson, his agent and attorney ; that in all other
respects the decree of the court below be affirmed ;  and

36 Or.—23.

that Dickinson and Swinerton recover of the defendants Vaughn, Sullivan, Wyatt, and Eglin their costs and disbursements on the appeal.        Modified.

Decided 13 August, 1900.

On Motion to Modify Decree.

[62 Pac. 12.]

*Mr. H. C. Watson*, for Swinerton and Dickinson.

*Mr. S. A. Jeffrey*, for A. L. McFadden.

*Mr. W. M. Ramsey*, for Vaughn and other claimants.

Mr. Chief Justice Bean delivered the opinion.

The motion for modification of the decree is based upon *ex parte* affidavits showing or tending to show that before the appeal was taken the clerk of the court below paid out the fund in controversy to the several claimants in accordance with the decree of that court. The right of appeal did not suspend the enforcement of the decree, nor justify the custodian of the fund in refusing to disburse it in accordance therewith. The court below might very properly have made an order directing the clerk to retain possession of the fund a sufficient length of time to enable the appellants to perfect an appeal. It did not do so, however; hence the clerk could, without incurring any personal liability, in good faith pay over the fund to the parties entitled to it under the decree: *Hovey* v. *McDonald*, 109 U. S. 150 (3 Sup. Ct. 136, 27 L. Ed. 888); *Keck* v. *Allender*, 42 W. Va. 420 (26 S. E. 437). But, if the money was paid out before the appeal, the appellants are entitled to recover from the other parties whatever was wrongfully distributed to them. Where a judgment or decree is modified or reversed on appeal, the appellant is entitled to restitution of all that he has lost under it.

The method of procedure to effect this object, however, is not uniform, but varies according to circumstances. Where the amount lost appears of record, and there is thus a certainty in the matter, a writ of restitution is sometimes issued by order of the appellate court: 18 Enc. Pl. & Prac. 889 ; *Estus* v. *Baldwin*, 9 How. Prac. 80 ; *Bickett* v. *Garner*, 31 Ohio St. 28.  But, where the facts do not so appear, some motion or process in the nature of a common-law *scire facias* is necessary, or a direct action may be brought against the respondent to recover what he wrongfully received under the erroneous judgment : *Metschan* v. *Grant County*, 36 Or. 117 (58 Pac. 80) ; *Northwestern Fuel Co.* v. *Brock*, 139 U. S. 216 (11 Sup. Ct. 523, 35 L. Ed. 151) ;  *Ex parte Morris*, 76 U. S. (9 Wall.) ·605, 19 L. Ed. 799 ;  *Haebler* v. *Myers*, 132 N. Y. 363 (28 Am. St. Rep. 589, 30 N. E. 968) ;  *Clark* v. *Pinney*, 6 Cow. 298 ;  note to *Little* v. *Bunce*, 7 N. H. 485 (28 Am. Dec. 368).  It is seldom the facts upon which the appellate court can safely base a judgment of restitution sufficiently appear of record.  The record is not prepared with a view to an adjudication or decision of that question.  When the right depends entirely upon matters *dehors* the record, the better practice, as we understand the authorities, is for the appellate court to direct that restitution be made to the appellant of all property and rights lost under the judgment, and to remand the cause to the court below for the enforcement of such order in a proper proceeding, upon notice to the parties : *Flemings* v. *Riddick's Ex'r*, 5 Grat. 272 ;  *Keck* v. *Allender*, 42 W. Va. 420 (26 S. E. 437).

Our statute provides that, when a judgment or decree is reversed or modified by the appellate court, it "may direct complete restitution of all property and rights lost thereby :"  Hill's Ann. Laws, § 545.  But this probably contemplates a final judgment of restitution only in cases

where the facts appear of record, and not where it is nec-
essary to make proof *aliunde* by *ex parte* affidavits. More-
over, a similar statute has been construed by the Supreme
Court of California to apply "only to those cases where
the judgment operates upon specific property in such a
manner that its title is not changed, as by directing the
possession of real estate, or the delivery of documents, or
of particular personal property in the hands of the de-
fendant, and the like :" *Farmer* v. *Rogers*, 10 Cal. 335 ;
*Hewitt* v. *Dean*, 91 Cal. 617 (28 Pac. 93, 25 Am. St. Rep.
219).

It is also urged that the former decree of this court is
erroneous in so far as it reduces the amounts to be paid
to the respondents Sullivan, Wyatt, and Eglin. This
matter seems sufficiently clear from the opinion of Mr.
Chief Justice Wolverton. The court below, in making
the order of distribution, neglected to charge Sullivan,
Wyatt, and Eglin with their proportionate share of the
attorney's fee for collecting the original fund, although
they made no contention as to the amount thereof. The
proportionate share of the attorney's fee due McFadden
and Dickinson, and the $10 costs incurred in commenc-
ing this suit, were therefore properly deducted from the
amount otherwise due the parties referred to, before dis-
tribution was made of the fund. The controversy between
McFadden and Dickinson as to the manner in which the
attorney's fee should be divided between them was a
matter which did not concern the other parties to the
action.

The questions raised by the petition for rehearing of
the plaintiff McFadden, are sufficiently covered by the
former opinion, and the motion is denied. The decree
is adhered to, except an order will be made that appel-
lants be restored to whatever they have lost by reason of

the decree of the court below, and the cause will be re-
manded to that court for such further proceedings as may
be proper.          MODIFIED :  REHEARING  DENIED.