M. W. Sage et al. v. Edward N. Clopper et al.

Decided November 10, 1898.

**1. Deed—Description.**

A deed sufficiently describes the lands conveyed as "all the lands bought by the grantors from [a named person], as more fully appears by a legal transfer of the same," where the land was fully described in a deed to one of the grantors by such named person, duly of record. Sage v. Clopper, 37 Southwestern Reporter, 363, adhered to.

**2. Judgment of Foreclosure—Description of Land.**

A decree of foreclosure sufficiently identifies the land upon which the lien is foreclosed as that conveyed by a certain deed from the plaintiff to defendant, where it describes the land as "six labors of land in plaintiff's petition named as sold to the defendant," and the quantity so mentioned and the amount of the foreclosure are the same as the quantity of land and the amount of one of the notes recited in the deed, and there is no other deed of record between the parties.

**3. Deed at Execution Sale—Presumption—Purchase by Attorney.**

It will be presumed in the absence of evidence to the contrary that a deed of land sold under execution executed to the attorneys of the judgment creditor, was taken for the latter's benefit, and that he held the equitable title thereunder, where their bid was credited upon the execution.

**4. Deed—Conveys Legal or Equitable Title.**

A deed conveys the grantor's beneficial title or right to the land, whether such title was the legal title or the equitable title.

**5. Judgment Amendment as Affecting Title of Purchaser Thereunder.**

A reversal of a judgment avoids a sale to the judgment creditor under an execution thereon, but when the judgment is reversed in part only, or is amended nunc pro tunc, at a subsequent term, in part only, the sale will be permitted to stand, unless there appear reasons for setting it aside, since all ground for the sale is not destroyed.

Appeal from Harris. Tried below before Hon. John Tod.

*A. J. Althouse* and *G. W. Tharp,* for appellants.

*George H. Breaker,* for appellees.

GARRETT, Chief Justice.—This was an action of trespass to try title brought by the appellees, Edward N. Clopper and others, against M. W. Sage and others for the recovery of the north half of twelve labors of land originally granted by the State of Texas to Fabricius Reynolds. The cause was tried by the court without a jury. This is the second appeal. See 37 Southwestern Reporter, 363, for decision on former appeal. On the first trial the court below held that the instrument offered in evidence by the appellees to show title in themselves, purporting to be a deed from James Rourke and Catherine Rourke to Nicholas Clopper, was inoperative to pass the title to the land in controversy, and rendered judgment for the defendants. Upon appeal from that judgment this court held that the instrument was sufficient as a deed to convey the land. Upon the last trial the plaintiffs prevailed and recovered judgment.

*Conclusions of Fact.*—Plaintiffs' evidence of title was as follows:

1. Patent from the State to Fabricius Reynolds, dated August 28, 1847, for twelve labors of land situated in Harris County, Texas.

2. Deed from Fabricius Reynolds to Catherine Rourke, wife of James Rourke, dated June 13, 1839, duly recorded, conveying the north half of the twelve labors of land for a consideration of $1002, of which $583 had been paid, and two notes "on one of which $80 was now due, and the other for the sum of $339." A vendor's lien was expressly reserved and retained on the land until the whole purchase money due by the notes should be fully paid.

3. A copy of the conveyance from James Rourke and Catherine Rourke to Nicholas Clopper above referred to, which is as follows:

*"Republic of Texas, County of Galveston.*—Know all men by these presents, That we, James Rourke and Catherine Rourke, of said county, do by these presents transfer and set over unto Nicholas Clopper, his heirs and assigns, all our right, title, and interest in and to all lands purchased from Fabricius Reynolds by us, as it may more fully appear by a legal transfer of the same.

"Given under our hands and seals this 3d day of July, 1841.

| | |
|---|---|
| [Seal] | "JAMES ROURKE, |
| [Seal] | "CATHERINE ROURKE. |
| | (Signing by mark.) |

"In the presence of C. F. Labadie, John M. Dors."

This deed was proved for record by C. F. Labadie, one of the subscribing witnesses, before a notary public in and for the Province of Ontario, Canada, on the 12th day of October, 1877, and was recorded in Harris County, November 19, 1877.

4. A transcript from the probate records and minutes of Harris County, date not shown, of proceedings in the estate of Andrew M. Clopper, showing that the deceased devised his property to three brothers and sisters therein named, mentioning among other property, "my share of my father's tract near Round Point." It was shown by evidence at the trial that Andrew M. Clopper was a son of Nicholas Clopper and one of his heirs. The heirship of the plaintiffs to the suit was fully shown.

5. The defendants having filed an affidavit attacking the deed of James Rourke and wife to Nicholas Clopper as a forgery, evidence was introduced on behalf of the plaintiffs to show the genuineness thereof. Without detailing the testimony of the witnesses at length, we find that the deed was shown to be genuine. Mrs. Merryman, widow of Edward N. Clopper, testified as to her husband's custody thereof as early as 1865; that she had seen and read the deed and knew that it was a deed from James and Catherine Rourke to Nicholas Clopper; and that it had been intrusted to an agent at Houston, Texas, to be proved for record and recorded; that her husband died in 1886, and she then delivered the deed to a firm of lawyers in Cincinnati, Ohio, after which it disappeared. The

living members of the firm of lawyers were examined, and one of them testified to the existence of the deed and the possession of it by the firm, and a failure to find it after a diligent search. It further appeared from the evidence that there was some correspondence and other documents among the papers of Nicholas Clopper, deceased, with reference to the land. There was a letter dated November 12, 1840, from Fabricius Reynolds to Clopper, in which he stated he inclosed a statement from the clerk of the court in which the note was lodged for collection, showing that the amount due him by Rourke was in good money $235.62, and cost of court, amounting to $32.38. The other documents were notes from Isaac B. Bailey to James Rourke and Catherine Rourke for the purchase money of two tracts of land conveyed to him by an instrument of even date. The instrument referred to was a memorandum of an agreement made the 28th of October, 1839, in which Rourke and his wife agreed to convey a part of the Fabricius Reynolds survey, whether the south half, or the one-half of the south half, is not clear. In the description given in this instrument one tract of the land conveyed is described as "lying in the county of Harrisburg aforesaid, on the waters of Clear Creek, and at that part of said stream known and designated as Round Point, the half part of a survey of fraction less than twelve labors made  *  *  *  for Fabricius Reynolds," etc.

The appellants deraigned their title through a deed from Fabricius Reynolds to George M. Patrick, dated November 21, 1848. It purported to convey the entire twelve labors of land for the sum of $1000. Embodied in the deed following the description was a memorandum that it was made "in order to cancel a bond and fulfil the conditions thereof" executed by the said Reynolds to George M. Patrick, January 1, 1839. The bond for title referred to, which was afterwards introduced in evidence by the defendants, was in the penal sum of $1000 to convey to said Patrick the south half of the twelve labors as soon as Reynolds should procure from the government a patent for the same, or within a reasonable time thereafter. Through eight other mesne conveyances ranging in date from 1848 to 1891, all duly recorded within a short time after their execution, defendants then deraigned title regularly from Fabricius Reynolds down to themselves. They introduced in evidence a judgment of the District Court of Harris County, rendered December 28, 1840, in a suit entitled No. 122, F. Reynolds v. James Rourke, in which the plaintiff recovered of the defendant the sum of $339 debt and $61 damages for the detention thereof, amounting to $400, also all costs by him expended, and it was further adjudged and decreed by the court, that "the six labors of land in plaintiff's petition named, as sold to the defendant, be sold at public outcry at the courthouse door in the city of Houston, on giving the usual notice thereof, for cash without appraisement, in virtue of the lien retained thereon to satisfy said debt and costs." The papers in the suit were shown to have been lost. An execution was issued February 24, 1841, which recited the judgment above described in full, and directed the sheriff to proceed according to law

and sell the six labors of land, mentioned as above, to satisfy said debt and damages and also the sum of $33.38 costs. The return and other indorsements on the execution showed that it was received March 13, 1841, and on the same date levied on the six labors of land mentioned in the decree, and for field notes, etc., referred to "a memorandum filed on the execution." The property was advertised to be sold on the 6th day of April, 1841, and was on that date sold and bid off by A. Wynns and William Lawrence for the sum of $50 for the whole tract. The return further showed that the bid of Lawrence and Wynns was paid for by a credit of their bid upon the execution, for which they executed a receipt, and that a deed for the property purchased had been delivered to them. The memorandum of field notes referred to was not found with the execution, and after a certified copy of the execution had been made in 1897 the original execution was also lost. It appeared from the execution docket that Wynns & Lawrence were the attorneys of the plaintiff in the suit. It was shown by the clerk of the County Court that he had made a search of the record of deeds of Harris County from the earliest date of such records up to 1842, and that there was no other conveyance from F. Reynolds to James Rourke or Catherine Rourke or to James and Catherine Rourke of six labors of land than the deed recorded in Book C, on page 346, in which Fabricius Reynolds conveyed to Catherine Rourke, wife of James Rourke, the north half of twelve labors of land originally granted to Fabricius Reynolds, under which the plaintiffs claim in this case. Defendants produced tax receipts showing that they and those under whom they claimed title had paid taxes on the land every year from the year 1850 to 1891 inclusive, except the years 1853, 1860, 1861, 1863, 1864, 1868, 1869, 1873, and 1888. At a term of the District Court subsequent to the term of court at which the decree in the above cause No. 122 of Fabricius Reynolds v. James Rourke was entered, another decree was entered in the same case on December 18, 1841, reciting that "upon motion of defendant's counsel and at representation of facts, it is ordered by the court that the judgment entered in this cause on the 24th day of December, 1840, be and the same is hereby set aside and annulled and avoided, and that judgment be entered nunc pro tunc for the sum of $230 debt and $26.88 damages, and that the plaintiff have his execution and costs."

*Conclusions of Law.*—1. We adhere to the decision of this court on the first appeal, holding that the deed from the Rourkes to Clopper was sufficient to convey the right, title, and interest of James and Catherine Rourke in the land in controversy to Nicholas Clopper.

2. The evidence was sufficient to establish the genuineness of this deed.

3. We are of the opinion that from all the facts introduced in evidence, the court below should have presumed that the title conveyed to Catherine Rourke, wife of James Rourke, by the deed of Fabricius Reynolds, was reinvested in Fabricius Reynolds by the foreclosure pro-

ceeding in the District Court of Harris County. The description in the judgment of the land upon which the lien was foreclosed is sufficient to identify it as the land conveyed to Catherine Rourke. The description is, "the six labors of land in plaintiff's petition named as sold to the defendant;" the quantity of land upon which foreclosure is made and the amount of the foreclosure are the same as the quantity of land and the amount of one of the notes recited in the deed. The description in the judgment may be aided by the deed, if that is sufficiently identified as the instrument by which the conveyance of the land was made. It appeared also that there had been no other deed placed of record from Reynolds to Catherine Rourke or James Rourke, and the conclusion must be from all the facts that the land upon which the lien was foreclosed was the same land as that described in the deed. The judgment was followed by the issuance of an execution commanding the sale of the land described in the judgment that was regular in form, and the sale of the land under the execution. Wynns & Lawrence were shown to be the attorneys of F. Reynolds, and their bid was credited upon the execution. It will be presumed that the deed which was executed as recited in the return upon the execution was taken by the attorneys for the benefit of their client, Reynolds. Whether the title of Reynold's was ever completed as a legal title, or whether his right to the land remained as an equity, his conveyance to Patrick made in 1848 conveyed the beneficial title or right to the land. Every fact is consistent with the presumption that Reynolds reacquired the title to the land before his conveyance to Patrick. From 1850 down to the time of the institution of the suit for nearly every year the taxes were paid by those holding the land under the title of defendants. No taxes whatever were shown to have been paid by the plaintiffs, and there was nothing whatever to indicate any claim of title by the plaintiffs except proof and record of the deed from Rourke to Clopper in 1877, and the mention thereof in the will of Andrew M. Clopper. The land had been bought and sold by numerous transfers and the deeds openly and promptly placed of record within a short time after their execution.

Notwithstanding the memorandum in the deed from Reynolds to Patrick, that it was executed to fulfil the conditions of the bond for title, it was sufficient to convey the title to the entire survey as it purported to do, and the decision on the first trial does not hold otherwise. Whether or not the second judgment entered in the case of Reynolds v. Rourke was void because entered at a subsequent term need not be decided. There could have been a state of facts under which it would be valid; but the sale at execution had already taken place under a valid judgment, and a subsequent setting aside of that judgment would not affect the title of the purchaser thereat.

The judgment of the court below will be reversed, and judgment will be here rendered in favor of the appellants.

*Reversed and rendered.*

ON MOTION FOR REHEARING.

GARRETT, CHIEF JUSTICE.—Upon the face of the judgment entered in the case of Fabricius Reynolds v. James Rourke on December 18, 1841, it appears to be no more than an amendment of the judgment of December 24, 1840, nunc pro tunc, as to the amount of the judgment. While it is the rule that the subsequent reversal of a judgment under which the plaintiff has purchased property at execution sale avoids such sale as to him, yet when the judgment is reversed in part only the sale will be permitted to stand, although the plaintiff was the purchaser, unless there should appear reasons for setting it aside, because all ground for the sale was not destroyed. 2 Freem. on Ex., sec. 347. The bid at which the land was purchased at the sale under the judgment as it was December 24, 1840, was much less than the amount of the amended judgment. The expression, however, in the opinion of the court with reference to the sale at execution, that "a subsequent setting aside of that judgment would not affect the title of the purchaser thereat," needs modification to the effect that a subsequent amendment of the judgment nunc pro tunc would not affect the title. The motion for rehearing is overruled.

*Overruled.*

Writ of rerror refused.