Argued December 4, 1962, affirmed January 23, 1963

THOMPSON *v.* THOMPSON ET AL

378 P. 2d 281

*Harrison M. Weatherford,* Albany, argued the cause for appellant. With him on the briefs was Mark V. Weatherford, Albany.

*Asa L. Lewelling,* Salem, argued the cause for respondents. On the brief were Lewelling & Gies, Salem.

Before McAllister, Chief Justice, and Perry, O'Connell, Goodwin and Lusk, Justices.

O'CONNELL, J.

This is a suit brought by the judgment debtor to set aside a sale on execution and to require defendants to account for the reasonable rental value of the property sold. Plaintiff appeals from a judgment in favor of defendants.

Defendant, Gladys Thompson, brought a suit for divorce against plaintiff, Kenneth Thompson. The decree granting her a divorce also awarded separate judgments against the present plaintiff for $25,000 as alimony, $3,000 as attorneys' fees, and $125 for unpaid temporary support. Kenneth Thompson appealed in that case. He did not file a supersedeas bond. Gladys

Thompson caused execution to issue on the judgments. Gladys Thompson was the purchaser at the sale on execution. The property consisted of a hotel in Albany which she obtained on a bid of $20,024.38, and a parcel of residential property in Salem which she obtained on a bid of $8,479.34. Kenneth Thompson failed to redeem the property within the statutory redemption period provided in ORS 23.560.

The certificate of sale for the Albany property was assigned to defendants, Brown and Burt, and subsequently the sheriff's deed for that property was issued to them. The sheriff's deed for the Marion county property was delivered to defendant, Gladys Thompson. She conveyed this property to defendants, Brown and Burt.

On June 22, 1960 this court handed down its opinion in the divorce suit which plaintiff had appealed. We sustained the decree awarding a divorce to Gladys Thompson but modified the judgment for alimony by reducing it from $25,000 to $10,000.[1] The defendants tendered the $15,000 difference to plaintiff. The tender was refused.

Plaintiff's complaint was treated by the trial court as one seeking restitution for unjust enrichment. Defendants moved for judgment on the pleadings on the theory that the payment of the amount tendered by them would discharge their obligation to make restitution to plaintiff. The motion was granted. The court then granted plaintiff's motion to present evidence "under the rule."

---

[1] Thompson v. Thompson, 222 Or 505, 353 P2d 241 (1960). The court found that "the award of divorce to Mrs. Thompson is justified" but that the amount of the judgment for alimony was "excessive." The court concluded as follows: "We, therefore, reduce the amount of the alimony to $10,000 and affirm the decree in every other respect."

The trial court heard the evidence and entered a decree which recited that there was no evidence which would support a decree setting aside the execution sale and that, therefore, the court adhered to the judgment on the pleadings.

The principal assignment of error is based upon the theory that the modification of the divorce decree by this court rendered the sale on execution voidable by plaintiff and entitled him to specific restitution of the property sold to satisfy the judgment. Plaintiff relies upon ORS 19.140 which provides as follows:

"19.140 Upon an appeal, the appellate court may review any intermediate order involving the merits or necessarily affecting the judgment or decree appealed from; and when it reverses or modifies such judgment or decree, may direct complete restitution of all property and rights lost thereby."

Defendants concede that where a judgment is *reversed* the judgment debtor may recover the specific property sold on execution.[2] However, defendants contend that the rule is otherwise where the judgment is only *modified*. Defendants argue that in the event that the judgment is merely modified and in the absence of fraud or some other distinct equitable basis for relief the judgment debtor's relief is limited to a recovery of the amount by which the judgment is reduced.

The general rule on the effect of a modification

---

[2] This court said in Lytle v. Payette-Oregon Irr. Dist., 175 Or 276, 286, 152 P2d 934, 938, 156 ALR 894 (1944), "If the judgment creditor has purchased the property at execution sale, and still retains it, [i.e., no bona fide purchaser acquired it] reversal of the judgment divests him of title. Annotation 29 ALR 1078." (The annotation cited contains an extensive collection of cases from the various jurisdictions).

of a judgment is stated in Restatement, Restitution § 74, comment m (1937):

"Where a judgment is modified and a smaller amount awarded to the judgment creditor, if payment has been made in excess of the amount finally awarded, the judgment debtor is entitled to restitution of the excess under the same circumstances and from the same classes of persons as where the judgment is reversed. If property of the judgment debtor was seized on execution and sold to a purchaser, the purchaser is entitled to retain the property but the creditor is under a duty of restoring any excess received. If the property has been purchased by the judgment creditor, the sale will not be set aside but the judgment creditor will be required to restore the excess amount of net proceeds received by him unless such result would be unfair to the judgment debtor."[3]

The right of the judgment debtor to set aside an execution sale after a modification, as distinguished from the reversal of a judgment, has never been passed upon directly in any Oregon case. Thus in *McFadden v. Swinerton*, 36 Or 336, 355, 59 P 816, 62 P 12, 13 (1900), it was said that "Our statute provides that, when a judgment or decree is reversed or modified by the appellate court, it 'may direct complete restitu-

---

[3] Examples of cases where a modification or a reversal in part where the sale was not set aside include Yndart v. Den, 125 Cal 85, 57 P 761 (1889); Martin v. Victor M & M Co., 19 Nev 197, 9 P 336 (1886); Jesup v. City Bank of Racine, 15 Wis 668, 673 (1862). But see Munson v. Plummer, 58 Iowa 736, 13 NW 71 (1882) (distinguishable since creditor wanted sale set aside); Cowdery v. London & San Francisco Bank, 139 Cal 298, 73 P 196 (1903) (distinguishable since basis of holding was that a reversal in part is technically a reversal).

The rule is sometimes stated with qualifying language. Thus in Sage v. Clopper, 19 Tex Civ App 502, 48 SW 36 (1898) it was said that the execution sale will stand where the amount bid at such sale was less than the amount of such judgment. See also, cases cited in note 4 infra.

tion of all property and rights lost thereby.' " The case was remanded for further proceedings to restore whatever the judgment debtor lost by reason of the original decree. The court did not decide whether the judgment debtor was entitled to specific restitution as a matter of statutory right, as plaintiff contends in the present case. The court cited, with approval, California cases interpreting a California statute similar to ORS 19.140. California holds that the judgment debtor is entitled to recover only the amount by which the judgment was reduced upon a modification of the judgment.[④]

It will be noted that the rule stated in § 74 of the Restatement, Restitution, does not permit the judgment creditor to keep the property sold on execution if "such result would be unfair to the judgment debtor." A similar statement of the rule is found in *Martin v. Victor M & M Co.*, 19 Nev 197, 9 P 336, 337 (1886). There the court, interpreting a statute similar to ORS 19.140, said:

> "* * * It is only in cases where the judgment is reversed, or so far modified as to make it inequitable to allow the sale to stand, that a court would be authorized, under the statute, to set the sale aside."

■ We are of the opinion that ORS 19.140 should be similarly construed. Therefore, if plaintiff is to prevail he must show that it would be inequitable to permit defendants to keep the property sold upon paying to plaintiff the difference between the original and the amended judgment.

---

[④] Barnhart v. Edwards, 128 Cal 572, 61 P 176 (1900); Hewitt v. Dean, 91 Cal 617, 28 P 93 (1891). Oklahoma is in accord, Reuck v. Green, 103 Okla 288, 229 P 1070, 1071 (1924). See also, Sage v. Clopper, 19 Tex Civ App 502, 48 SW 36 (1898).

Plaintiff asserts that an inequity resulted from the manner in which the defendants bid in the property at the execution sale. He contends that attorneys Brown and Burt "manipulated" the sale as a result of which they personally profited from the transaction. It was shown that Brown and Burt purchased the interest of defendant Gladys Thompson for $10,000. It was further shown that the defendants agreed among themselves to bid in the property for the total amount of the judgments.

The purchase of Gladys Thompson's interest by Brown and Burt was made only after she was carefully advised not only by Brown and Burt but by other counsel at their suggestion. She was in urgent need of cash and gave up her interest fully realizing that her interest in the property might be of greater value than the price she received. Furthermore, even if there had been something inequitable about the conduct of Brown and Burt in connection with their transaction with Mrs. Thompson, it would have no relevancy in establishing any breach of duty to plaintiff. Similarly, the agreement to bid in the property for the amount of the judgment has no relation to any duty to plaintiff. Plaintiff and defendants were dealing at arm's length at the time of the execution sale. They had made no agreement relating to the bid which defendants would make. Under these circumstances defendants had the privilege of bidding any amount they pleased and were entitled to agree among themselves as to the bid which would be made.

■■ Plaintiff argues that the disparity between the amount bid at the execution sale and the value of the property is, in itself, a basis for setting aside the sale. We have held that a sale may be set aside where the amount paid for the property at the forced sale

is so grossly inadequate as to shock the court's conscience.[9] Without deciding whether the sale can be set aside for this reason alone after confirmation of the sale, we are of the opinion that the evidence does not clearly establish a shocking disparity between the amount bid and the value of the property. As we indicated above, the total amount bid at the execution sale was $28,503.72, of which $8,479.34 was bid for the residence and $20,024.38 was for an undivided one-half interest in the hotel. According to the testimony in the present case, the residence had a value of approximately $17,500 and a one-half interest in the hotel property was worth approximately $40,000. From this amount must be deducted about $4,000 in back taxes and judgment lien against the property. This would not produce a disparity shocking to the judicial conscience.

The only other possible equitable consideration in the case is the fact plaintiff may have been able to pay a judgment of $13,125 (i.e., the amended judgment of $10,000 for alimony, the $3,000 judgment for attorneys' fees, and the $125 judgment for unpaid support money) and thus save his property from execution sale. He may not have been able to raise $28,125, the amount of the original judgment. Assuming, without deciding, that this fact alone would be sufficient to warrant setting aside the sale upon a modification as distinguished from a reversal of a decree, the record in this case contains no evidence that plaintiff would have been able to raise the lesser amount. Plaintiff testified that the original judgment in the divorce suit completely destroyed his credit—

[9] Ahlstrom v. Lyon, 169 Or 629, 131 P2d 219 (1942); Nodine v. Richmond, 48 Or 527, 87 P 775 (1906).

that he "couldn't do business with the bank."[©] The vague assertion that plaintiff's credit was impaired and that he was unable to raise the money necessary to pay off the judgment is not a sufficient basis for granting equitable relief. To accept plaintiff's position would for all practical purposes render the generally accepted rule permitting the judgment creditor to retain the property upon a modification of the judgment meaningless, because in most instances the judgment debtor can show that his property was sold on execution as a result of his inability to raise the money necessary to pay off the judgment.

Even though the judgment was modified, it still represents a judicial declaration that the judgment debtor is obligated to the judgment creditor although in a lesser amount. The judgment creditor is entitled to realize upon this lesser judgment out of the judgment debtor's property already sold on execution unless the latter can show why it would be inequitable to permit the sale to stand.

■ Plaintiff argues that the divorce decree in this case created only a judicial lien and that Gladys

---

[©] Plaintiff testified further as follows:

"Q (By Mr. Weatherford) Well, could you protect yourself financially against this sale?

"A Well, why, certainly not. It was—by that time the business was with the bank and I never have been able to conclude personal loans with the bank since one of them said to me, 'Well, I will hold this for awhile—'

"Q You couldn't redeem the property?

"A Well, certainly not with a preposterous deal of that nature.

"Q You have no other assets except these properties?

"A That's right, these are contingencies. That is why I used up all the money hauling timber piles and with the interest— but, I can't have an interest and not keep it alive under proceedings of your right and the law of 1872 and it costs a lot of money and then the alimony and this all came in sequence and it is not as simple as it might look to some of these brighter people."

Thompson would have had to obtain an order of the court authorizing a sale to enforce the lien. In other words, he contends that a sale on execution upon a judgment is not authorized where a lien is created by judicial decree. There is no merit in this contention. A divorce decree requiring the defendant to pay money is a judgment. ORS 107.130 (2). Such a judgment is enforceable by sale on execution in the same manner as any other judgment.[2]

Plaintiff has not shown any inequity in the present case. Therefore, the judgment of the lower court must be affirmed.

---

[2] Forbes v. Jennings, 124 Or 497, 264 P 856 (1928). Statements in accord with this position are found in Shelley v. Shelley, 204 Or 436, 440, 283 P2d 663, 665 (1955); Stephens v. Stephens, 170 Or 363, 367, 368, 132 P2d 992, 994 (1943); Cousineau v. Cousineau, 155 Or 184, 192, 63 P2d 897, 900-901, 109 ALR 643 (1936).