Argued and submitted June 25, 1982, affirmed in part,
reversed in part and remanded July 6, reconsideration denied September 30,
petition for review denied November 15, 1983 (296 Or 56)

# FIRST STATE BANK OF OREGON,
*Respondent - Cross-Apppellant,*

*v.*

# HOEHNKE NURSERY COMPANY et al,
*Respondents - Cross-Appellants,*
*Cross-Respondents,*

# CAPITAL INVESTMENTS, INC.,
*Appellant - Cross-Respondent,*

# BUSINESS MEN'S SERVICE, CO.,
*Respondent.*

# CAPITAL INVESTMENTS, INC.,
*Appellant - Cross-Respondent,*

*v.*

# LOFGREN et ux,
*Respondents - Cross-Appellants,*
*Cross-Respondents,*

*and*

# FIRST STATE BANK OF OREGON,
*Respondent - Cross-Appellant.*

(116796, 119922; CA A21498)

667 P2d 1022

Jeffrey P. Foote, Portland, argued the cause and filed the briefs for appellant - cross-respondent.

Mildred J. Carmack, Portland, argued the cause for respondent - cross-appellant First State Bank of Oregon. With her on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Jack L. Orchard, Portland, argued the cause for respondents - cross-appellants - cross-respondents Hoehnke Nursery Company, William E. Lofgren and Jean K. Lofgren. With him on the briefs was O'Connell, Goyak & Ball, P.C., Portland.

No appearance for respondent Business Men's Service Co.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

In these consolidated foreclosure actions, First State Bank of Oregon (Bank) and Capital Investment Company (Capital) are proceeding against defendant Hoehnke Nursery Company's real property in Marion County (the Marion County property) and defendants Lofgrens' residential property in Multnomah County (the Multnomah County property). Bank held a mortgage on the Marion County property and a trust deed on the Multnomah County property securing two notes, one given by the nursery for $380,595 and one given by the Lofgrens for $75,000. Capital held mortgages on both properties to secure a note given by the nursery for $350,000. In the foreclosure action, Capital also sought judgment against the Lofgrens individually as guarantors of the note. The trial court decreed foreclosure as to Bank but denied foreclosure as to Capital, because it had "unclean hands," and also denied Capital judgment on the note and the guaranty. Capital, Bank, the Lofgrens and the nursery all appeal some aspect of the court's decree. We affirm in part and reverse in part.

In January, 1976, the nursery gave Capital a note for $350,000, with the Lofgrens' personal guaranty. A condition of the loan was that Capital would place two representatives on the nursery's board of directors. The nursery's obligation to Capital was subordinated to its "institutional debt," at that time owed the First National Bank of Oregon. In early 1977, the nursery terminated its dealings with First National Bank and began dealing with Bank, which approved a $365,000 line of credit for the nursery. The nursery's obligation to Bank was then unsecured, but Capital's rights were subordinate to those of Bank.

In the spring of 1978, the nursery was in serious financial difficulty. The parties agreed that, if the nursery were to survive, it would require new capital. Bank and Capital therefore entered into a "Participation Agreement" by the terms of which Capital agreed to waive its right to declare a default and Bank agreed to convert its demand notes to installment payments and to provide an additional $100,000, if all of the nursery's obligations to both parties were collateralized. The agreement required that the nursery provide Bank and Capital with first and second mortgages, respectively, on the nursery property in Marion County and the Lofgren home in

Multnomah County. Accordingly, in August, 1978, the nursery executed and delivered to Bank a mortgage on the Marion County property to secure its note for $380,595. The Lofgrens, individually, also executed and delivered to Bank a trust deed on their Multnomah County property to secure the $75,000 in new money that Bank advanced to them for use by the nursery. Similarly, to secure its $350,000 note, in July, 1978, the nursery executed and delivered to Capital a mortgage on the Marion County property. The Lofgrens, as individuals, also executed and delivered to Capital a mortgage on their Multnomah County property to secure the same note that they had earlier guaranteed.

In the spring of 1979, the company was still in financial difficulty. Mr. Lofgren and Messrs. Banner and Norris, the Capital representatives who sat on the nursery board, discussed the situation in detail at a board meeting in June, 1979. The parties disagree as to what was said and what course of action was agreed upon. Banner and Norris testified that the nursery was in default at the time of the meeting but that they had agreed that Capital would not declare a default, provided Mr. Lofgren immediately develop a "restructuring" of the current debt with the Bank and provided also that an upcoming July 1, 1979, interest payment be paid on time.[1] The nursery did not make the July interest payment. Banner testified that, although he was in continual contact with Mr. Lofgren from July through September, no restructuring plan was forthcoming.

Mr. Lofgren, on the other hand, testified that, at the June board meeting, Banner and Norris agreed to give him time to develop a restructuring plan that would meet Bank's approval. With this direction, and with Bank's input, he set about formulating a restructuring plan. He testified that he kept Banner fully informed of his progress. By early fall, he said, he had received three commitments from investors of $50,000 each in new capital and was working on three more. He agrees that the nursery never made the July, 1979, interest payment.

---

[1] The parties do not dispute that, up to this point, Capital had for several years consistently accepted late payments. No arguments are premised on that fact.

On September 12, 1979, Capital declared a default. Bank, which had earlier given Lofgren until October 14 to come up with a restructuring plan, changed its position and declared a default on September 19. Mr. Lofgren testified that, on receiving this information, the prospective investors withdrew their offers.

Bank brought suit in Marion County, seeking foreclosure against the nursery property.[2] Capital cross-claimed against Hoehnke Nursery Company and the Lofgrens, seeking judgments against them and foreclosure against the nursery property. Shortly thereafter, in a suit brought in Multnomah County, Capital sought to foreclose on the Lofgren home and asked for judgment against the Lofgrens. The two cases were then consolidated for trial in Marion County.

The trial court entered a decree foreclosing Bank's mortgage on the nursery property and the trust deed on the Lofgren home. It found, based on a "Cross-Collateralization Agreement" among the Lofgrens, the nursery and Bank, that the two properties secured the full amount due Bank and that Bank's position was senior to that of Capital as to both properties. The court also permitted Bank to pursue a deficiency judgment on the nursery property. In addition, it awarded it attorney fees, but excluded from computation of those fees the services performed in this litigation relative to Bank's priority, in relation to Capital, as opposed to its right to foreclose against the nursery and the Lofgrens.

The trial court found Capital's mortgage against the nursery property to be a valid and subsisting lien, superior to any interest other than that of Bank's but decreed that Capital was not entitled to foreclosure, because it "did not come into court with clean hands." That was apparently based on the Lofgrens' affirmative defense that Capital, through its representatives on the nursery board, had breached its fiduciary duty to the nursery by declaring the default. The court also declared Capital's mortgage on the Lofgren home "satisfied," presumably for the same reason that it refused to foreclose its mortgage on the nursery property. It found that Capital was not entitled to judgment on the guaranty against Jean Lofgren,

---

[2] Bank did not seek to foreclose on its trust deed until Capital instituted proceedings against the Multnomah County property.

because it did not give her the notice required by the terms of the guaranty. It also decreed, without explanation, that Capital was not entitled to judgment against William Lofgren on the guaranty or otherwise. Finally, the court declared that neither the Lofgrens nor Capital were entitled to attorney fees.

All parties appeal some aspect of the court's decree. We consider each in turn.

## CAPITAL'S APPEAL

Capital argues that the court erred in finding that it came into court with "unclean hands." In a letter to the parties before entry of the decree, the trial court expressed its opinion:

> "Suffice to say the actions of both Banner and Norris (as representatives of Capital) on the Board of Hoehnke left much to be desired. There is no doubt their interest was with Capital and not Hoehnke. Because of their greed to place Capital in a favored position they were 'hoisted on their own petards.' "

The court was correct that Capital, by reason of its presence on the nursery's board, had a fiduciary duty to the nursery. However, as a creditor of the nursery, it was also entitled to protect its investment. That was the very reason for its presence on the board. No party disputes that the nursery was, in fact, in default when Capital declared the default or that the nursery was experiencing serious financial difficulty. In June, Capital had given Mr. Lofgren an opportunity to develop a financial restructuring plan, and three months later that plan was not complete. The trial court apparently believed that, because Bank had given an October 14 deadline to come up with a restructuring plan, Capital breached its fiduciary duty by declaring the default a month before that deadline.

We do not agree, however, that Capital was obliged to rely on Bank's assessment of the amount of time that the nursery should have to improve its financial condition. The nursery was in default, and Capital did not breach any duty by acting on that default. It was error to deny it foreclosure as to either property on that basis. Thus, we also agree with Capital's contention that the trial court erred in decreeing that its mortgage on the Multnomah County property "is satisfied * * * and any interest held by [the Lofgrens] in the mortgaged property shall be free of any claim or encumbrance of Capital,

whether arising under said mortgage or otherwise." In neither instance does the doctrine of unclean hands preclude entry of the decree of foreclosure sought by Capital.[3]

It was also error to deny Capital judgment on William Lofgren's guaranty, which made him unconditionally liable in the event of the nursery's default. That default is not disputed here.[4]

■   Capital argues next that the court erred in decreeing that, by virtue of the Cross-Collateralization Agreement among the nursery, the Lofgrens and Bank, Bank's mortgage and trust deed secured the total debt owed by the Lofgrens and the nursery to Bank. Capital argues that, under the Participation Agreement it entered into with Bank, Bank had a first mortgage on the Marion County property, which secured only its loan to the nursery, and a first mortgage on the Multnomah County property, which secured only its $75,000 loan to the Lofgrens. The question is whether Bank or Capital is entitled to the proceeds from the Multnomah County property beyond the first $75,000 owed Bank.

The Cross-Collateralization Agreement provided, in part:

"NOW, THEREFORE, IT IS HEREBY AGREED:.

"1.   *Lofgren to Loan or Contribute Funds to Hoehnke.*

"Lofgren promises and agrees to either loan or contribute the whole of the loan proceeds from their loan from Lender to Hoehnke.

"2.   *Real Estate Loan Security Cross-Collateralized.*

"It is agreed that the property described in Exhibits 'A' and 'B' shall all be security for the loan made to Hoehnke, and

---

[3] Both properties have already been sold under the Bank's decree of foreclosure. The Lofgrens and the nursery moved to dismiss Capital's appeal, arguing that Capital's failure to file a supersedeas bond, and the resulting foreclosure sale, renders Capital's appeal moot. Although the remedy of foreclosure may no longer be available, Capital is still entitled to whatever rights it has in the proceeds, as well as judgment on the note. *See e.g. Call v. Jeremiah,* 246 Or 568, 571-78, 425 P2d 502 (1967); *Thompson v. Thompson,* 233 Or 262, 378 P2d 281 (1963). Capital's appeal is not moot.

[4] Capital argues that, in addition, it was entitled to judgment against Jean Lofgren under the personal guaranty. The trial court found that Mrs. Lofgren had not been given the 30-day notice of intent to enforce the guaranty against her, which notice was required by the agreement, and refused the relief requested. We have reviewed the record and find no error.

similarly shall all be security for the loan made to Lofgren, and that in the event of a default in either loan, Lender may foreclose upon any or all of such property, in its sole discretion, and exercise with respect thereto all other rights and remedies provided for in the Deed of Trust and Mortgage executed simultaneously herewith.

"3. *Loan Defaults.*

"It is agreed that a default in the loan to Hoehnke shall constitute a default in the loan to Lofgren, and similarly that a default in the loan to Lofgren shall constitute a default in the loan to Hoehnke, and that in the event of any default in either loan, Lender may, in its sole discretion, proceed to exercise all or any of the remedies given it with respect to either loan."

Under this agreement, Bank obtained a first lien on both pieces of property to the full extent of the debts owed it. Capital argues that the agreement violated the terms of its Participation Agreement with Bank, which provided, in part:

"* * * * *

"6. WHEREAS, Hoehnke, by separate agreements with the Bank and Capital respectively, has agreed to provide the Bank and Capital with first and second mortgages respectively to the real estate identified in the Exhibits A [Marion County property] and C [Multnomah County property] attached hereto and security interests in all of the personal property identified in the Exhibit B attached hereto in order to secure the present obligations identified in Paragraphs 1 and 2 above; and Hoehnke by separate agreements with the Bank and Capital respectively, has agreed to provide the Bank with a security interest in its inventory and accounts receivable, and either the Bank or Capital with a first mortgage on the property identified in Exhibit C in order to secure the new money cash advances identified in Paragraphs 5 and 7 herein.

"* * * * *

"A. IT IS AGREED that the collateral described in Exhibits A, B and C shall secure the interests of both the Bank and Capital as their interests may appear in the obligations identified in Paragraphs 1 and 2 above;

"* * * * *

"C. IT IS FURTHER AGREED that neither the Bank nor Capital, without the prior written consent of the other, shall (a) make or consent to any alteration in the terms of the notes evidencing the loans identified in Paragraphs 1 and 2 above, or the collateral or instruments securing the same; * * *.

"*\*\*\*\**"

The "new money cash advances identified in Paragraphs 5 and 7 herein," referred to in paragraph 6 above, are the $75,000 loan by Bank, as well as an additional $100,000, which Bank was to provide.[5] When the Participation Agreement was executed, the amounts of the "obligations identified in paragraphs 1 and 2 above" had not yet been entered. The parties agreed that Bank would fill in the amounts when they were computed. Bank completed the two paragraphs as follows:

"1.   WHEREAS, Hoehnke Nursery Company (Hoehnke) is indebted to the Bank for loans in the principal sum of $455,595.98, evidenced by Hoehnke's two (2) promissory demand notes in principal amounts as follows:

| "Date | Amount |
| --- | --- |
| "1.   August 2, 1978 | $380,595.98 |
| "2.   August 2, 1978 | $ 75,000.00 |

"The borrower under Note No. 1 is Hoehnke Nursery Company, an Oregon corporation and the borrower under Note No. 2 is William E. Lofgren and Jean K. Lofgren, husband and wife. Each of these notes is cross-collaterized to the effect that a default in one loan shall constitute a default in the other and vice versa.

"with interest as therein provided;

"2.   WHEREAS, Hoehnke is indebted to Capital for a loan in the principal sum of Three Hundred Fifty Thousand Dollars ($350,000), evidenced by Hoehnke's January 16th, 1976 promissory note in the principal amount of Three Hundred Fifty Thousand Dollars ($350,000) with interest as therein provided."

Paragraphs 1 and 2 recite the total preexisting debts to Bank and Capital. Paragraph 6 gives Bank and Capital "first and second mortgages respectively" in both pieces of property to secure the "present obligations identified in Paragraphs 1 and 2." Paragraph 7 gives Bank a first mortgage on the Multnomah County property to secure its $75,000 loan. Capital points to paragraph 7 and argues that, despite the language of paragraph 6 apparently giving Bank first priority in both properties for the full amount of its loan, it understood its

---

[5] As far as the record discloses, the $100,000 was never advanced.

position as to the Multnomah County property to be inferior to Bank's only to the extent of the $75,000 loan.

We agree with Capital that the language of the Participation Agreement is not clear as to priority in the Multnomah County property beyond the $75,000. The testimony conflicted sharply as to what priorities the parties actually agreed to and whether Capital was aware of the Cross-Collateralization Agreement. However, by letter of August 8, 1978, Bank informed Banner:

"On August 4, all documents were delivered to the title company for recording. We recorded two mortgages in favor of our bank. The first mortgage was against the land, buildings and equipment of the nursery property itself and secured our note in the amount of $380,595.98. The second instrument, a first mortgage on Mr. and Mrs. Lofgren's home, was filed to secure a note of even date in the amount of $75,000. We took a cross collateral agreement wherein the nursery property also secures the debt of Mr. and Mrs. Lofgren on their home, and the personal residence also secures the real estate debt of the nursery."

This letter, which Banner does not deny receiving, belies Capital's assertion that it did not know that Bank had consolidated its security in the two pieces of property. Moreover, although we review *de novo,* ORS 19.125(3), the trial court's resolution of disputed fact questions is entitled to considerable weight when based on its observations of the witnesses and their credibility. *Huff v. Bretz,* 285 Or 507, 522-23, 592 P2d 204 (1979); *Empire Building Supply v. EKO Investments,* 40 Or App 739, 745, 596 P2d 593 (1979). Here, the court stated:

"* * * It is the opinion of this Court that any claim of Capital is secondary to the 'Cross-Collateralization Agreement' of First State Bank. Furthermore, this agreement covers both the Marion County property of Hoehnke and the Multnomah County property of the Lofgrens. As to the signing, conveying, filing, etc., of these papers, the Court was impressed with the testimony of Mr. Banner and charitably will state only that it was less than candid. There is no doubt that Mr. Banner did agree to this agreement. * * *"

The trial court's findings indicate that, in fact, Capital agreed to structure the transaction in the form it finally took. The court did not err in decreeing the priorities as it did.

## BANK'S APPEAL

■ Bank argues that the court erred in denying it attorney fees incurred in establishing its priority with respect to its security. Both notes, the mortgage and the trust deed provided for reasonable attorney fees in the event litigation became necessary to collect on the notes or to foreclose on the mortgage or the trust deed. Bank was required to join Capital as a junior lienholder of record in order to preserve its priority. ORS 88.030. Capital was required to assert its priority in this proceeding or be barred from doing so. *See* ORS 88.050; *Family Federal Savings v. Paradise Ventures, Inc.,* 38 Or App 199, 589 P2d 1167 (1979). Given these circumstances, the fees necessary to establish Bank's priority are "reasonable attorney fees" within the terms of the attorney fee provisions in the documents. Priority is an important part of what Bank contracted for when it made loans to the nursery and to the Lofgrens. Bank also contracted for the right to collect attorney fees in connection with actions or suits that might be required to collect its debt in full and to realize on its security. Their agreement was not conditioned on the action or suit being maintained without opposition by other creditors. The court erred in refusing to award fees incurred in establishing Bank's priority. On remand, the court will determine the amount of those fees.

## THE LOFGRENS' APPEAL

The Lofgrens argue that, as the "prevailing party," they are entitled to attorney fees from Capital under ORS 20.096(1). Under our disposition of the case, they are not prevailing parties and, therefore, are not entitled to attorney fees.

We reverse those portions of the decree denying Capital's foreclosure as to the Marion County property, declaring its mortgage on the Multnomah County property satisfied and denying Bank attorney fees incurred in establishing its priority. In all other respects, the decree is affirmed. The case is remanded for entry of a decree not inconsistent with this opinion.