## ANDERSON EDWARDS, APPELLANT, *v.* RICHARD S. PERKINS, RESPONDENT.

APPEAL—VOLUNTARY PAYMENT OF JUDGMENT.—A party is not precluded from taking and maintaining an appeal by the fact that he has voluntarily paid the judgment appealed from.

A LEASE NOT A CONVEYANCE—IMPLIED COVENANTS.—A lease is not a conveyance within the meaning of Title 1 of Chapter 6 of the Miscellaneous Laws. Under the laws of this state, as at common law, a lease for a term of years is a chattel-interest, and there is an implied covenant in such leases that the lessor will protect the lessee in the quiet enjoyment of the premises for the term of the lease.

IDEM—GROWING CROPS.—A lease with the right of immediate possession and enjoyment of issues and profits carries with it the emblements, unless the same are reserved in the lease, and words in a lease to the effect that the lessee is to have and own all crops growing on the premises add nothing to the lessee's rights.

APPEAL from Washington County.

This action is brought to recover damages for alleged breaches of implied covenants in an instrument executed under seal. The complaint alleges that on the sixth day of March, 1876, W. N. McCoy was the owner of a farm in Yamhill county, subject to a mortgage owned by J. S. Giltner, then due; that on said day Giltner commenced suit to foreclose said mortgage; that on the twenty-first day of November, 1876, McCoy conveyed by deed the mortgaged premises to defendant; that on the tenth day of January, 1877, before decree of foreclosure, the respondent and appellant entered into the contract or lease mentioned; that at

the time the agreement was made the appellant gave respondent a note for five hundred dollars, due first November, 1877, and paid same at maturity; that in March, 1877, a decree of foreclosure was rendered against McCoy, directing sale of the premises to satisfy the sum of one thousand nine hundred and ninety-two dollars and sixty-nine cents; that execution was issued April 24, 1877. The premises were sold to Giltner May 26, 1877, and were not redeemed; that appellant raised wheat of the value of one thousand three hundred and seventy-nine dollars on the premises.

It is alleged that by reason of the foreclosure and sale before the wheat could be harvested respondent's title wholly failed, and appellant was evicted and was compelled to and did pay upon demand the rents, being one third of the grain raised of the value of four hundred and fifty-nine dollars and eighty cents, to Giltner, who, on the first of July, 1877, demanded possession of said premises; that respondent had due notice of the premises and neglected to protect appellant in the possession. Judgment is demanded, etc.

To this complaint respondent interposed a demurrer, on the ground that it does not state facts sufficient to constitute a cause of action. Judgment was rendered in the court below for the respondent for costs. The appellant paid the judgment in full, voluntarily, before he took any appeal.

*McCain & Fenton and T. B. Handley,* for appellant:

At common law the words "demise and lease," and every mutual contract of leasing, implied covenants of seisin and for quiet enjoyment. (Rawle on Covenants for Title, 476, 487; 8 Cowen, 36; 11 Paige, 569; 4 Cush. 14, 351; 26 Mo. 115; 1 Chitty on Pleadings, 117; 1 Wash. on Real Prop. 397; 42 N. Y. 167, 171; 3 Kernan, N. Y. 160; 33 Pa. St. 453.)

This doctrine still obtains, unless abrogated by our statute, which says: "No covenant shall be implied in any conveyance of real estate, whether such conveyance contain

special covenants or not." (Misc. Laws, p. 516, sec. 6.) This provision does not apply to leases, a lease not being a conveyance, within the meaning of that section. The Code of New York is the same as ours in this respect, and it has been repeatedly construed not to cover leases for years, they being chattel interests and not real estate. Also, it is a rule of statutory construction, that all statutes in derogation of the common law must be strictly construed, and that when one state adopts a statute of another state it is presumed to have adopted the construction placed upon that enactment by the courts of that state at the time of its adoption. (3 Kent. 401; 2 Bouvier's Dictionary, 422, 423; 1 Sharswood's Blackstone, p. 14 and note, chaps. 2, 7 (book second); Williams on Real Property, 40; 34 Miss. 64; 1 Wash. 389, 407, 410; 5 Mass. 419; 15 Id. 445; 9 Bush. 556; 64 Barb. 558; 9 Bos. 57; 42 N. Y. 167; 13 Id. 151; Smith on Statutory Construction, sec. 634; Revised Stat. N. Y. sec. 140; 11 Paige, 566; 8 Id. 597.)

The statutory definition of conveyance relied upon by respondent has exclusive reference to fraudulent conveyances, and does not relate to the section abrogating the doctrine of implied covenants in conveyances of real estate. The sections are parts of two different acts relating to different subjects, and for entirely different purposes. (Misc. Laws, p. 523, sec. 57; Session Laws of 1854.)

Our statute, as well as that of New York, recognizes the distinction between a lease and a conveyance in two ways—by a provision for acknowledgment and record of conveyances of real estate and by omitting such provision in the case of leases. And by the statute of frauds a leasehold estate for one year is good, even though founded in parol, but as a conveyance of real estate it would be void. (Misc. Laws, p. 515, sec. 1; Civ. Code, 265, sub. 6, sec. 775.)

The covenants implied are that the landlord has power to lease and that the tenant shall quietly enjoy for the term demised; and it makes no difference who disturbs the tenant—it may be the landlord himself or a stranger—the rule is the same, and if the tenant is evicted the covenant for quiet enjoyment is broken. (Rawle on Covenants, 476; 13

N. Y. 151–60.) The breach of this covenant is made by
an eviction by paramount title. (Rawle on Covenants, 241;
4 Hill, 645; 11 H. H. 83; 9 Cowen, 157; 17 Mass. 590; 4
Id. 349; 18 Me. 244.)

The eviction may be actual or constructive, and the tenant
may attorn to the holder of the paramount title, although
at his peril. (Rawle on Covenants, 241, 260, 271; 5 Clarke,
Iowa, 86; 2 Smith's Leading Cases, 604; 4 Com. 275; 2 Am.
456; 4 Hill, 345; 10 Met. 194; 44 N. Y. 382; 9 Bos. 57.)
The complaint alleges notice to Perkins, the landlord,
and an eviction by actual disturbance, and under the facts
pleaded, Giltner, the purchaser at the sale, was entitled to
the exclusive possession of the lands demised from the date
of his certificate of purchase until redemption. (Civ. Code,
p. 172, sec. 304.)

Giltner's assertion of a hostile demand, he being the
rightful holder of paramount title until redemption, and
Edwards's attornment to him, completed an actual eviction.
(Rawle on Covenants, 288, 502; 5 Clarke, Iowa, 89, 297;
Rawle on Covenants, 216.) The question of record notice
of the incumbrance by which the tenant of Perkins was
finally evicted can not effect the recovery upon the lease in
question. Parties are conclusively presumed to have con-
tracted with direct reference to the facts at the time, and
the tenant—even if bound to take notice of the defect or
cloud upon his landlord's title—had a right to rely upon
the covenant for quiet enjoyment. Perkins, when he leased
to his tenant, held an estate liable to be destroyed by in-
cumbrances of record, and even before his purchase the
suit to foreclose was pending, and he was bound to take
notice of *lis pendens*, as affecting the estate he purchased
and the estate he leased. (4 Or. 354; 1 Johns. Ch. 565; 2
Id. 441.)

*Thos. H. Tongue and Yocum & Clarno*, for respondent:

By a voluntary payment of the judgment appellant ac-
quiesced and consented to its entry as fully as if it had
been a judgment by confession. He waived and abandoned

his right of appeal. (10 La. Amer. 643; 5 Id. 598; 13 Id. 59; 10 Bosw. N. Y. 337.)

Under section 6, page 516, of our statutes, the contract between the parties is a conveyance of real estate. The instrument is executed with all the formalities of a deed except the acknowledgment. The above provision of our statute was copied from the New York code, and up to January 13, 1854, when the act was passed in our state, the New York courts held leases to be within its provisions. (14 Wendell, 38; 2 Duer, 401.)

*The Mayor of New York* v. *Maler,* 13 N. Y. 151, was decided in 1855, and then only upon a definition of terms given by the New York statutes in a subsequent chapter. The only definition given by our statute to the terms "conveyance" and "real estate" are broad enough to include leases, and differs widely from the New York definition. The New York cases were decided in actions for rent, and when the eviction was by the lessor himself. The law makes a wide distinction between an eviction by the lessor and a stranger. (1 Wash. Real Prop. 325, 326, 343; 4 Cush. 24; 11 N. Y. 218.)

The case cited by plaintiff in 42 N. Y. is not sustained by the authorities cited. If plaintiff's view is right, a lease of a thousand years would not be within our statute. (4 Kent, 93.) When the common law implies a covenant for quiet enjoyment, the only penalty for a breach is a discharge from the payment of rent. (1 Wash. Real Prop. 325, 326.)

There is no breach of covenants until eviction even to defeat an action for rent. (1 Wash. 343, 345; 31 N. Y. 515, 516; 13 Mich. 179; 20 N. Y. 284, 285; 3 Or. 501; Rawb. on Cov. 192, 210, 243, 245, 490, 504; 1 Wash. 361, and cases cited.)

Giltner made a naked demand which was not yielded to. This is not an eviction. (15 N. Y. 328, 332, 333.) The case in 12 Mass., 43 to 46, is a parallel case with the one at bar. The appellant claims that he attorned to Giltner, but it does not appear when. He could not voluntarily attorn to a stranger. (1 Wash. 360, 361, and cases cited.) He should have notified the respondent to defend. (12 Mass.

45, 46.) Had Giltner evicted appellant, it must have been under lawful authority. (1 Wash. 326, 344.) No authority was given under our statutes. This is a clear case of collusion between appellant and Giltner.

The appellant claims that the words " lease and demise " imply covenants, but there is no term leased or demised.

Under this instrument plaintiff is estopped from denying that he held for the term. (15 N. Y. 329, and cases cited; 12 Mass. 46, 47; 1 Wash. 357, 358.) The contract was entire, and plaintiff knows that he paid more for the crops that had been put in than he did for the use of the land. It is impossible for this court to say what the measure of damages is, if the plaintiff has sustained any loss; but the fact is, he did not.

By the Court, BOISE, J.:

It is claimed, in this case, by the respondent, that this cause should be dismissed for this reason, that there is no udgment in the circuit court from which an appeal will lie. It appears from the amended transcript that on the twenty-eighth day of May, 1878, the judgment appealed from was rendered against the appellant for twenty-four dollars and eighty-five cents, costs and disbursements, and that afterwards, on the same day, the appellant paid the same, and on the twenty-third day of July, 1878, appellant caused a notice of appeal to be served on the respondent. The question is, can a party to a judgment against himself appeal after he has voluntarily paid the judgment? When an appeal is taken, an undertaking must be given by appellant and filed with one or more sureties, to the effect that the appellant will pay all damages, costs and disbursements which may be awarded against him on the appeal; but such undertaking does not stay the proceedings unless the undertaking further provides to the following effect: " If the judgment or decree appealed from be for the recovery of money or personal property, or the value thereof, that if the same or any part thereof be affirmed, the appellant will satisfy it so far as affirmed." So in this case, if the appellant had not paid the judgment, the respondent

could have had an execution issued on the judgment and compelled him to pay it notwithstanding the appeal. We think he is in no worse position from having paid the judgment voluntarily than if he had settled the execution with costs. There is nothing in this point.

We will now consider the point made in the argument that the lease named in the complaint being in writing and under seal, conveyed an interest in the land such as is described in title 1, of chapter VI, of the code, and that the lease is a conveyance of an interest in the land to which there could be no implied covenants, as provided in section 6 of said title. (Stat. 516.)

At common law a lease of land for a term of years was a chattel interest and did not descend to the heir, but went to the administrator, and such is the case still unless this rule has been changed by our statute.

The statute provides for the conveyance of land by deed, and we think embraces only such conveyances as purport to convey a freehold estate such as may descend to heirs, or is for the life of the grantee, and does not include leases which are classed by the statute as personal property. (Stat. p. 550, sec. 14.) In this section of the statute the terms real estate and personal property are clearly defined in these words: "The term real property includes all lands, tenements, and hereditaments and rights thereto, and all interests therein, whether in fee-simple or for the life of another. The term personal property includes all goods, chattels, moneys, credits and effects of whatever nature not included in the term real property." It will be seen by these definitions that the word real property is more comprehensive than the word land, and the definition here given of real property is certainly more comprehensive than the word land as used in title 1, of chapter VI, of the code, on which respondents rely, and yet it excludes leases. We think it is very evident from these statutes regulating the conveyance and descent of real property, that leases are not embraced in the words "conveyance of land," as used in title 1, of chapter VI, and that the provision in section 6,

of said title, that "no covenant shall be implied in any conveyance of real estate," does not apply to leases.

As to leases, we think there is an implied covenant that the lessor will protect the lessee in the quiet enjoyment of the premises for the term of the lease. (Rawle on Covenants, 215, 476, 477.)

If the tenant is evicted by a person having a paramount title, he can have an action against his landlord for damages.

There is one other question presented in this case, and that is, that the contract of leasing is entire, and that the lessee, when he took the lease and entered on the land, purchased of the lessor some grain that was sown on the premises.

The lease of the premises, with the right of immediate possession and entire enjoyment of the issues and profits, would carry with it the emblements, unless the same were reserved in the lease. So the words in this lease, "and the said Edwards is to have and own all crops that are now put in or growing on said premises," add nothing to the rights of Edwards under the lease.

We think the complaint does state facts sufficient to constitute a cause of action, and that the circuit court erred in sustaining the defendant's demurrer.

The judgment of the circuit court will be reversed, with costs, and a new trial ordered.