Submitted on record and brief September 11, 2000, reversed and remanded in part; otherwise affirmed August 15, 2001

RAMEX, INC.,
an Oregon corporation;
Ron Gibson; Shon Gibson;
and Custom Rock and Minerals,
an Oregon corporation,
*Appellants,*

*v.*

NORTHWEST BASIC INDUSTRIES,
an Alaska corporation;
Paul Thomason; Paul Johnson; and Dick Simmons,
*Respondents,*

*and*

RAILTEX,
a Texas corporation;
and Central Oregon & Pacific Railroad, Inc.,
a Delaware corporation,
*Defendants.*

98-0506-L-2; A107986

29 P3d 1211

CJS, Appeal and Error § 192.

John R. Huttl filed the brief for appellants.

James R. Dole filed the brief for respondents Northwest Basic Industries, Paul Thomason, Paul Johnson, and Dick Simmons.

James V. Shepherd, Jon V. Buerstatte, and Gleaves Swearingen Larsen Potter Scott & Smith LLP filed the brief for defendants RailTex and Central Oregon & Pacific Railroad, Inc.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

Edmonds, P. J., concurring.

## KISTLER, J.

The trial court granted defendants' motions to dismiss plaintiffs' complaint because their claims were barred by issue preclusion. The court awarded an enhanced prevailing party fee to defendants and entered judgment in their favor. Plaintiffs appealed, and defendants have moved to dismiss the appeal because plaintiffs paid the judgment voluntarily. We deny defendants' motion to dismiss the appeal, reverse the trial court's judgment, and remand for further proceedings.

This case involves an ongoing dispute regarding a mining business in Jackson County. Defendant Northwest Basic Industries (NWBI) is the fee simple owner of real property that includes a silica and limestone quarry.[1] Defendant Central Oregon & Pacific Railroad (CORP)[2] owns a milling facility, which is located on NWBI's property near the quarry. NWBI leased the facility from CORP. This arrangement continued for a limited period of time, and, after NWBI's lease expired, CORP agreed to lease the facility to plaintiffs, who planned to use it as part of an independent mining operation. After securing the lease, plaintiffs entered into several "quarrying, processing and transporting" contracts that were to generate approximately $92,000 per year, and plaintiffs claim to have begun negotiating "future contracts," which would have generated another $5.5 million per year. In the summer of 1997, CORP terminated plaintiffs' lease and entered into a new lease with NWBI.

Plaintiffs brought claims for tortious interference with contractual relations and conversion against NWBI, a claim for tortious interference with contractual relations against CORP and its parent company, and a claim for tortious interference with business expectations against all defendants.[3] The essence of plaintiffs' tortious interference

---

[1] Plaintiffs' complaint also names three individual shareholders of NWBI as defendants. We refer to the shareholders and the company collectively as NWBI.

[2] CORP's parent company, RailTex, has also been named as a defendant.

[3] After this appeal was filed, plaintiffs dismissed their claims against CORP and RailTex. Our opinion is limited to plaintiffs' claims against NWBI.

claims against NWBI is that NWBI persuaded CORP to terminate plaintiffs' lease by improper means and with improper motives.[4] Defendants moved "for an order pursuant to ORCP 21 A(8) dismissing the complaint with prejudice." The motion was based largely on the doctrine of issue preclusion; that is, defendants argued that the controlling issues had effectively been decided against plaintiffs in a previous action between the parties. Therefore, defendants argued, plaintiffs were barred from bringing the present action. In an order granting defendants' motion against the tortious interference claims, the trial court stated:

> "All defendants have filed a motion to dismiss based upon issue preclusion and the theories set forth in *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 891 P2d 639 (1995). The motions contend that the final judgment in the case of *Northwest Basic Industries Inc. v. Ron Gibson* * * * has previously determined that the lease in question was properly terminated by Central Oregon and Pacific Railroad, Inc. and that under the *Uptown Heights* case, the plaintiffs cannot prevail in claims 1, 2 and 3. The motions are well taken and are hereby granted."

The trial court also granted a motion to dismiss plaintiffs' fourth claim for relief, the conversion claim against NWBI. Both motions were granted without leave to amend. The trial court awarded defendants an enhanced prevailing party fee and entered judgment in their favor.

Plaintiffs appealed but did not file a supersedeas undertaking. NWBI executed on the judgment, and plaintiff paid the judgment in response to the writ of execution. NWBI has filed a motion to dismiss plaintiffs' appeal. Relying primarily on *City of Portland v. One 1973 Chevrolet Corvette*, 113 Or App 469, 470, 833 P2d 1285 (1992), NWBI argues that plaintiffs' failure to file an undertaking means that plaintiffs paid the judgment voluntarily and that their appeal is moot. Plaintiffs respond that NWBI's argument and, by extension, our decision in *City of Portland* are inconsistent with settled Supreme Court authority.

[4] The conversion claim against NWBI is based on allegations that, after plaintiffs' lease with CORP terminated, defendant NWBI unlawfully retained possession of plaintiffs' machinery.

■ The Supreme Court has long recognized that voluntarily paying a judgment does not preclude a party from appealing from that judgment. *Cottrell et ux. v. Prier et ux.*, 191 Or 571, 573, 231 P2d 788 (1951); *Staiger v. Holman*, 144 Or 67, 69, 6 P2d 43, 18 P2d 591, 23 P2d 917 (1933); *Duniway v. Cellars-Murton Co.*, 92 Or 113, 170 P 289, 179 P 561 (1919); *Eilers Piano House v. Pick*, 58 Or 54, 113 P 54 (1911); *Edwards v. Perkins*, 7 Or 149, 154-55 (1879). As the court first explained in *Edwards*, an appellant can file an undertaking promising to pay the judgment, if affirmed, and also take an appeal from the judgment. 7 Or at 154-55. The situation is no different if the appellant pays the judgment instead of filing the undertaking. *Id.* The "payment [pending appeal is] simply another mode of effecting the purpose of such undertaking," *Staiger*, 144 Or at 69 (explaining *Edwards*), and the appellant "is in no worse position from having paid the judgment voluntarily than if he had settled the execution with costs," *id.* (quoting *Edwards*, 7 Or at 155). In both situations, an appellant may pursue his or her appeal. *Staiger*, 144 Or at 69; *Edwards*, 7 Or at 155.

The court has recognized at least three exceptions to that general rule. In some circumstances, complying with a judgment may also entail accepting its benefits, and the court has recognized that a person who voluntarily accepts the benefits of a judgment may not challenge it on appeal. *See Cottrell*, 191 Or at 574-75; *Lord v. Pettibon*, 102 Or App 607, 795 P2d 607 (1990). In *Cottrell*, for example, the trial court held that the plaintiffs were entitled to specific performance of a real estate contract and entered a judgment directing the defendants to deliver the deed to the plaintiffs in return for plaintiffs' paying defendants the contract price. 191 Or at 572-73. In compliance with the judgment, the defendants both delivered the deed and accepted payment. *Id.* They later sought to appeal. *Id.* The court dismissed the appeal because the defendants could not both accept the benefits of the judgment and appeal from it, at least as long as they had the option of staying enforcement of the judgment by tendering the deed into the court. *Id.* at 574-76.

■ At first blush, there is some tension between the reasoning in *Edwards* and *Cottrell*. In one case, the failure to

take advantage of procedures to stay enforcement of the judgment did not preclude an appeal while it did in the other. Any tension between the cases can be resolved, however, by considering the differing principles at work in each case. In *Edwards*, compliance with the judgment did not entail accepting the benefits of the judgment. There is nothing inconsistent with voluntarily complying with the obligation that the judgment imposed and challenging the judgment on appeal. Conversely, in *Cottrell*, the appellant could not comply with the judgment without also accepting its benefits, thus bringing into play the principle that a party may not accept the benefits of a judgment and simultaneously appeal from it. *Cottrell*, 191 Or at 575; *see also Lord*, 102 Or App at 610. *Cottrell* accordingly holds that, in those circumstances, an appellant who fails to take advantage of procedures to stay enforcement of a judgment will voluntarily accept the benefits of the judgment and be barred from challenging it on appeal. 191 Or at 575.[5]

Two other exceptions to the general rule in *Edwards* deserve brief mention. *Staiger* explains that "[w]hen a judgment is rendered against a party, his payment of the [judgment] will not preclude him from maintaining an appeal, unless it satisfactorily appears to the court that the payment was not coerced and was made with a view of settlement." 144 Or at 69. Although one might question when a party would pay the judgment as part of an effort to settle the case, a judgment could give the respondent some but not all the relief that he or she had sought. In those circumstances, the appellant could agree to pay the judgment in return for the respondent agreeing not to cross-appeal.[6]

Finally, when compliance with the judgment causes the "entire subject matter of the appeal" to disappear leaving

_____

[5] Accepting the benefits of a judgment will bar an appeal if the appeal puts at risk those portions of the judgment from which the appellant has benefitted. *See Schlecht v. Bliss*, 271 Or 304, 309-11, 532 P2d 1 (1975) (identifying exceptions to the principle that accepting the benefits of a judgment will bar an appeal); *Mask and Mask*, 143 Or App 377, 380-81, 923 P2d 1304 (1996). We need not and do not seek to define the limits of this rule to say, in this case, that the principle at work in *Cottrell* and *Lord* differs from the principle at work in *Edwards* and its progeny.

[6] The example noted above does not necessarily exhaust the circumstances in which an appellant might pay the judgment with an eye towards settlement.

nothing that "a reversal of the decree could affect," the appeal will be dismissed as moot. *Duniway*, 92 Or at 116. Compliance with a writ of mandamus may moot the appeal, for example. *See Eilers Piano House*, 58 Or at 56; *School District v. Crowell*, 33 Or 11, 13-14, 52 P 693 (1898). As the court has explained, in light of the nature of the relief sought in mandamus, "it would be a vain thing, indeed, to adjudge that an inferior tribunal was under no obligation to perform an act after it had been fully accomplished." *School District*, 33 Or at 13. Conversely, when an appellate court can grant the appellant some of the relief he or she seeks, the appeal will not be moot. *See Duniway*, 92 Or at 116; *McFadden v. Swinerton*, 36 Or 336, 354, 59 P 816, 62 P 12 (1900).

With that background in mind, we turn to NWBI's motion to dismiss the appeal. The only evidence in this case is that plaintiffs paid the judgment when faced with a writ of execution. Plaintiffs' compliance with the judgment did not constitute an acceptance of its benefits, as that principle was explained in *Cottrell*. There also is no evidence that plaintiffs' compliance was made with an eye toward settlement. Finally, compliance did not moot the appeal; if plaintiffs are successful, they may recover the money they paid NWBI and continue to pursue their claims against it. Under *Edwards*, *Staiger*, and *Cottrell*, plaintiffs' compliance with the judgment does not bar their appeal.

NWBI, however, argues that two cases support its position. It relies initially on *Washington v. Cleland*, 49 Or 12, 88 P 305 (1907), for the proposition that voluntary satisfaction of a judgment renders the appeal moot. NWBI reads too much into *Washington*. That case was a mandamus action to compel the trial court to issue a certificate of probable cause in a criminal case and thus stay execution of a $200 fine pending appeal. *Id.* at 12-13; *see Whitley v. Murphy*, 5 Or 328, 330-31 (1874) (certificate of probable cause suspends execution of a criminal sentence pending appeal). The plaintiff in the mandamus action (the defendant in the underlying criminal case) paid $200 into the court, "not as a fine, but as a deposit for her release until the [mandamus proceedings] could be heard." *Washington*, 49 Or at 13.

The Supreme Court held that the criminal statutes did not allow a convicted defendant to post a bond to stay execution of a criminal sentence and that, the plaintiff having paid the entire amount of the fine, the mandamus proceeding to stay execution of the fine was moot. *Id.* at 13-14. *Washington* does not stand for the broad proposition that a voluntary satisfaction of a civil judgment forecloses an appeal, as NWBI argues. That proposition is squarely at odds with *Edwards* and *Staiger*. *Washington* stands instead for the far narrower proposition that a mandamus proceeding to stay enforcement of a criminal fine pending appeal is mooted by payment of the fine—a proposition that is consistent with the court's other cases in the area.

NWBI also relies on our decision in *City of Portland*, which appears to support NWBI's position. In that case, the trial court entered a judgment that both ordered the city to return property that it had seized and also awarded the claimant attorney fees. 113 Or App at 470. The city returned the property and paid the judgment. *Id.* The city appealed, and we dismissed its appeal as moot. We reasoned:

> "A voluntary satisfaction of a judgment generally forecloses an appeal from the judgment by the satisfying party. *Washington v. Cleland*, 49 Or 12, 14, 88 P 305 (1907). Even if City is correct that it was required [by statute] to return claimant's property, it did not use available statutory procedures to stay enforcement of the judgment for attorney fees pending appeal. Therefore, its payment of the judgment was voluntary. *See Lord v. Pettibon*, 102 Or App 607, 795 P2d 607 (1990). The appeal is moot."

*Id.* at 470. The facts we recited in the opinion do not suggest that the city had accepted the benefits of the judgment, as the appellant had in *Cottrell* or *Lord*.[7] Similarly, the facts do not suggest that the city had paid the judgment "with an eye toward settlement" or that the case was moot; nothing in the

---

[7] The concurring opinion views our decision in *City of Portland* as a case in which the city benefitted from the judgment by complying with it. *See* 176 Or App at 88 (Edmonds, P. J., concurring). Accordingly, it does not find it necessary to decide whether that decision remains good law. *See id.* In our view, we cannot avoid that question. Neither our description of the judgment in *City of Portland* nor our reasoning in that case suggests that compliance with the judgment benefitted the city in a way that would preclude it from pursuing an appeal.

opinion suggests that we could not have ordered the claimant to repay the money the city had paid him. Rather, we appear to have held that an appellant's voluntary compliance with a judgment is sufficient—standing alone—to foreclose the appeal.

Our decision in *City of Portland* cannot be reconciled with the Supreme Court's decisions in *Cottrell, Staiger, Duniway, Eilers Piano House,* or *Edwards.* Those cases reject the notion that the mere fact that an appellant has voluntarily complied with a judgment precludes him or her from bringing an appeal. They also recognize that the failure to file an undertaking does not preclude an appellant from pursuing an appeal unless, as a result of doing so, the appellant accepts the benefits of the judgment.[8] To the extent that our opinion in *City of Portland* holds that an appellant's voluntary compliance with a judgment is sufficient—standing alone—to foreclose an appeal, we disavow it. *See Kambury v. DaimlerChrysler Corp.,* 173 Or App 372, 379, 21 P3d 1089 (2001) (adhering to *stare decisis* "unless error is plainly shown to exist"); *Newell v. Weston,* 156 Or App 371, 380, 965 P2d 1039 (1998), *rev den* 329 Or 318 (1999) (same). Following *Edwards, Staiger,* and *Cottrell,* we hold that plaintiffs' compliance with the judgment in this case does not bar them from pursuing their appeal.

■ ■ Having resolved NWBI's motion to dismiss the appeal, we turn to the merits of plaintiffs' argument. They argue that they adequately alleged intentional interference with contractual relations in their complaint and that the trial court erred in dismissing their claims.[9] Plaintiffs also assign error to the trial court's decision to award enhanced prevailing party fees to defendants, arguing that the court failed to make the necessary findings under *McCarthy v.*

---

[8] We note that our reasoning in *City of Portland* is also internally inconsistent. Whatever other effect voluntary payment of the judgment for attorney fees may have had on the city's ability to appeal the judgment, it did not moot the case. As long as the claimant could repay the fees, the appeal presented a live controversy.

[9] Plaintiffs' discussion under this assignment of error focuses on their first three claims for relief and does not mention the conversion claim against NWBI, which NWBI moved to dismiss on grounds other than issue preclusion. We accordingly assume that plaintiffs' assignment of error applies only to the first three claims for relief and affirm the trial court's unchallenged decision to dismiss the conversion claim.

*Oregon Freeze Dry, Inc.*, 327 Or 84, 957 P2d 1200, *adhered to on recons* 327 Or 185, 957 P2d 1200 (1998). *See* ORCP 21 A(8). This case arises on a motion to dismiss, and our review, like the trial court's, is limited to the face of the complaint. *Business Men's Service Co. v. Union Gospel Ministries*, 120 Or App 228, 229, 852 P2d 199 (1993). We "accept as true all well-pleaded allegations and all reasonable inferences that may be drawn therefrom." *Huang v. Claussen*, 147 Or App 330, 332, 936 P2d 394, *rev den* 325 Or 438 (1997); *Silkett v. Royal Crown Cola Bottling Co.*, 151 Or App 187, 189, 947 P2d 626 (1997).

■    In the present case, although the trial court was limited to the allegations in the complaint in deciding whether plaintiffs had stated a claim, it expressly based its decision on an issue preclusion theory advanced by defendants. On NWBI's motion to dismiss the complaint for failure to state a claim, any previous litigation between the parties was not properly before the court. *See Business Men's Service Co.*, 120 Or App at 229 (holding that claim preclusion was not a proper basis for dismissal because the trial court was limited to the face of the complaint, which did not mention previous litigation involving the parties). In this procedural posture, the trial court erred in granting NWBI's motion to dismiss the first and third claims for relief against NWBI on the ground of issue preclusion. *See id.*[10]

Reversed and remanded as to plaintiffs' first and third claims for relief against defendants Northwest Basic Industries, Inc., Paul Thomason, Paul Johnson, and Dick Simmons; enhanced prevailing party fee in favor of those defendants vacated; otherwise affirmed.

**EDMONDS, P. J.,** concurring.

I agree with the result in this case. I write separately because I believe that the majority unnecessarily overrules our holding in *City of Portland v. One 1973 Chevrolet Corvette*, 113 Or App 469, 833 P2d 1285 (1992).

---

[10] We note that NWBI does not argue that the allegations in the complaint, if true, fail to state a claim. Rather, NWBI's underlying rationale, which runs throughout its motion to dismiss and its appellate brief, is that the issues presented by plaintiffs' tortious interference claims have been previously litigated and decided contrary to the allegations in plaintiffs' complaint.

This is an area of law that involves a number of cases from which conflicting legal rules could be drawn. My view of the existing law is that there are three general principles potentially in play. The first principle addresses the maintenance of an appeal by a prevailing party who is entitled to have the losing party perform some obligation under the judgment. The general rule is that a prevailing party will lose the right to appeal a judgment if the party accepts the benefit of the defendant's performance. For example, if the plaintiff is awarded $5,000 by a judgment, the defendant tenders the $5,000, and the plaintiff accepts the awarded amount from the defendant, the plaintiff has lost the right t appeal on the ground that the award was not sufficient. *See Portland Construction Co. v. O'Neil*, 24 Or 54, 32 P 764 (1893);[1] *Moore v. Floyd*, 4 Or 260 (1872).[2]

The second principle governs appeals by losing parties. The general rule is that a losing party will not lose the right to appeal if the party performs obligations required under the judgment, unless it appears that the party intended to either settle the case by satisfying the judgment or perform other obligations that would benefit that party. *See Edwards v. Perkins*, 7 Or 149 (1879).[3] Whether a payment of a judgment is voluntary will also be affected by the ability of the other party to enforce the judgment. *Cottrell et ux. v. Prier et ux.*, 191 Or 571, 231 P2d 788 (1951). Thus, if the

---

[1] In *Portland Construction Co.*, the prevailing party was awarded a monetary judgment, the amount of which the losing party paid to the court clerk. The prevailing party withdrew the sum awarded by the judgment from the clerk, held it for four days, and then returned it to the court. When the prevailing party appealed from the judgment, the court held that, as to the sum withdrawn by the prevailing party, "[t]he plaintiff was not bound to take it, but, having done so, his act is a termination of his right to further litigation." *Portland Construction Co.*, 24 Or at 57.

[2] In *Moore*, the court dismissed the appeal after the plaintiff obtained a verdict and judgment against the defendant for $500 plus costs and disbursements. The defendant paid the entire amount owed, and a full satisfaction was entered. Then the plaintiff attempted to appeal, and the court held that "the right to proceed on a judgment and enjoy its fruits, and the right of appeal, are not concurrent; on the contrary, they are totally inconsistent." *Moore*, 4 Or at 261.

[3] In *Edwards,* the defendant was ordered to pay $24.85 plus costs and disbursements. He satisfied the judgment on the day it was entered. He then filed an appeal. The plaintiff argued that the defendant had waived his right to appeal by paying the judgment, but the court reasoned that the defendant could have been forced by the plaintiff to pay the sum due notwithstanding the appeal, so his payment did not affect his right to appeal. *Edwards*, 7 Or at 154-55.

judgment is paid under threat of execution, or if not paid to settle the case, an appeal is not barred. *Coker & Bellamy v. Richey*, 108 Or 479, 482, 217 P 638 (1923); *see also Staiger v. Holman*, 144 Or 67, 6 P2d 43 (1933); *Cottrell*, 191 Or at 575.

The third principle governs appeals by both prevailing and losing parties, when the judgment contains reciprocal obligations or multiple obligations of one party. An appeal is a renunciation of the entire judgment. *Moore*, 4 Or at 261. For example, the judgment in *Cottrell* ordered the appellants to deliver a deed to the respondents and the respondents to pay the purchase price of the property to the appellants. 191 Or at 571. The appellants delivered the deed and took the money from the respondents, but then appealed from the judgment. A statutory mechanism existed at the time that would have allowed the appellants to deliver the deed to the court and stay the execution of the judgment. The court said that, because the respondent's ability to execute on the judgment could have been negated by the giving of the deed to the court, the choice made by the appellants barred their appeal. *Gottrell*, 191 Or at 575-76.

Similarly, in *Lord v. Pettibon*, 102 Or App 607, 795 P2d 607 (1990), the judgment imposed reciprocal obligations on Lord and Pettibon. Under the terms of the judgment, Pettibon was to execute certain documents and, in return, Lord was to give him a promissory note and deed. Because of a dispute over some of the terms, Pettibon refused to execute the relevant documents. The court ordered Pettibon to sign the documents, which he did, and then the court entered the judgment disposing of all claims. Pettibon took the deed and promissory note from Lord and assigned it to a trust of which he was trustee and appealed from the other portions of the judgment. Pettibon contended on appeal that he was forced by the court to execute the written settlement, so his appeal was not inconsistent with having performed some of the terms of the judgment. We held, relying on *Cottrell*, that Pettibon's acceptance of the benefits of part of the judgment precluded his appeal from the other parts, because the judgment was not severable. *Lord*, 102 Or App at 610. Thus, the general rule in those cases is that, where the multiple parts of a judgment are dependent upon each other—in other

words, not severable—then performance of part of the judgment, or acceptance of the benefit of part of the judgment, will bar an appeal on the entire judgment.

This case requires only application of the second principle. Plaintiffs, the losing parties, have appealed and also have paid the judgment because of the threat of execution. In contrast, our ruling in *City of Portland,* like the holding in *Cottrell*, is an application of the third principle, where the appellant, rather than renouncing the entire judgment, appeals from it while complying with part of it to the appellant's benefit. The key to that understanding lies in the reference in *City of Portland* to *Lord.* The City had sought by its action to foreclose on property that it had previously seized. The judgment against it required it to deliver the seized property to the claimant and pay a judgment for attorney fees. While appealing the judgment, the City voluntarily returned the seized property and paid the judgment for attorney fees. One benefit that it derived from those acts was that it no longer had to store or maintain possession of the seized property that it was lawfully obligated to keep in order to preserve its rights to foreclose. *See* Or Laws 1989, ch 791, § 5(1) to (3).[4] Had the City been successful on appeal, it would have been faced with the prospect of prosecuting a forfeiture proceeding on property that it no longer had in its possession, when its right to forfeiture depended on its possession. The City's plight was further complicated by the fact that it voluntarily paid the attorney fee judgment when there were procedures available to stay its enforcement, not unlike what existed in *Cottrell*. The citation to *Lord* in the opinion demonstrates that we were applying the rules that apply to multi-part judgments. At the heart of all of the principles underlying this area of the law is the understanding that when a judgment is voluntarily performed before a decision is made on appeal, then there is nothing left upon which an appellate judgment contrary to the trial court judgment could operate. *Eilers Piano House v. Pick,* 58 Or 54, 56, 113 P 54 (1911).

---

[4] In substance, the statute authorized the forfeiting agency to (1) store the property for safekeeping; (2) maintain the property so as to preserve its value; (3) transfer the property to another agency with forfeiture authority; or (4) sell, lease, rent or operate the property in a commercially reasonable manner and hold the proceeds pending forfeiture.

That is exactly the situation that the City found itself in after returning the seized property, thus resulting in our dismissal of the City's appeal.

In summary, my differences with the majority are two-fold. First, we need not overrule *City of Portland* in this case because it does not involve multiple parts of a judgment. Rather, it involves solely the payment of the judgment to avoid execution. Second, I disagree with the majority that "[t]he facts we recited in the opinion do not suggest that the city [in *City of Portland*] had accepted the benefits of the judgment, as the appellant had in *Cottrell* or *Lord*." 176 Or App at 83. In my view, the City received a benefit in that case by divesting itself of the responsibility for the property when it was required to maintain possession pending appeal. It may be that, on those facts, the majority disagrees that the City received benefits from returning the seized property, but that issue is not before us in this case, nor need it be decided in order to rule in this case. Because this area of law is not without its tension and sometimes conflicting rules, we are ill-advised to overrule precedent when the precedent is distinguishable on its facts from the case at issue. Given the importance of the role of *stare decisis* in our jurisprudence, the majority's unnecessary overruling of *City of Portland* will erode the reliance that the bench and bar place on our decisions. Consequently, I do not join in the majority's overruling of *City of Portland*.